[S. F. No. 17373. In Bank. Dec. 6, 1946.]

DEL MAR CANNING CO. (a Corporation), Petitioner, v. LEE F. PAYNE et al., Respondents.

John Milton Thompson, Orrick, Dahlquist, Neff, Brown & Herrington and Willard Johnston for Petitioner.

Robert W. Kenny, Attorney General, and Ralph W. Scott, Deputy Attorney General, for Respondents.

DOOLING, J. pro tem.—Petitioner herein seeks a writ of mandate to compel the issuance of a permit to take and utilize pilchard sardines for reduction to meal in its Plant No. 2 for the 1946-47 season. Petitioner owns a building in Monterey in which are located a fish canning plant and two fish reduction plants designated for convenience "Plant No. 1" and "Plant No. 2." Plant No. 2 was constructed in 1945 but no permit was issued by respondents for its operation in the 1945-46 sardine season because it was not completed by May 15, 1945.

For the 1946-47 season the respondent commission adopted a Rule H reading:

"(h) Permits shall be granted or issued only to complete reduction plants. A complete reduction plant shall be a build-

ing or buildings which must be independent of any other plant, except the cannery of which the plant is a part, and all machinery and equipment including hopper, hoist, and unloading facilities, scales, fish storage bins, presses, dryers, disintegrators, wet or dry, meal sacking equipment, meal storage warehouse, oil settling tanks, oil centrifuges, oil loading equipment, and steam plant, and all other equipment necessary for the unloading, weighing and processing of sardines and for the storage of the products obtained therefrom. The joint use of any of the equipment or machinery with any other reduction plant shall not be permitted.'' (14 C.A.C. 155(h).)

By letter dated November 27, 1945, the respondent commission supplemented and construed Rule H as follows:

''The second sentence of Rule H is intended as a guide to those who are constructing new plants and intend to apply in 1946 for a reduction permit for a plant which was not authorized in the 1945-46 season to reduce sardines. Plants which operated in the 1945-46 season will not be affected by the second sentence of Rule H except as to operating equipment mentioned therein.''

The effect of Rule H as so construed was to require every fish reduction plant which had not operated under a permit granted in the 1945-46 season to be housed in a separate building while allowing two or more such plants to continue to operate in a single building if they had operated under permits in the 1945-46 season.

Pursuant to Rule H as so construed, petitioner was denied a permit for its Plant No. 2, the sole ground of denial being that it was not operated in the previous season and was not located in a building independent of any other plant. Admittedly separate permits for more than one plant housed in one building were granted for the 1946-47 season to other operators who had held permits for the same plants in the previous year. The discrimination so practiced is attacked by the petitioner as a violation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

■ A classification which draws the line in favor of existing businesses as against those later entering the field will be upheld if any reasonable and substantial basis can be found to justify the classification. (*People* v. *Western Fruit Growers*, 22 Cal.2d 494, 506 [140 P.2d 13], and cases therein cited.) On the other hand, such a classification is unconstitu-

tional if it is purely arbitrary and capricious, resting on no reasonable or substantial difference between the classes when considered in relation to the object of the regulation. (*Mayflower Farms* v. *Ten Eyck,* 297 U.S. 266 [56 S.Ct. 457, 80 L.Ed. 675] ; *In re Wacholder,* 1 Cal.App.2d 254 [36 P.2d 705] ; *In re Fassett,* 21 Cal.App.2d 557 [69 P.2d 865] ; *Soares* v. *City of Santa Maria,* 38 Cal.App.2d 215 [100 P.2d 1108] ; *Los Angeles County* v. *Hollywood Cemetery Assn.,* 124 Cal. 344 [57 P. 153, 71 Am.St.Rep. 75].)

In *Ferrante* v. *Fish & Game Commission, ante,* p. 365 [175 P.2d 222], a majority of the court found a reasonable and substantial basis for the classification therein attacked, a controlling factor being that those engaged in the reduction of sardines to fish meal in the previous season might reasonably require more time to repair and recondition their plants than the May 15 deadline fixed for newcomers who were applying for permits for the first time. We can find no such reasonable and substantial basis for the classification made by its Rule H as interpreted by the respondent commission.

The only justification for the classification here in question advanced by respondents is found in the following allegations of their answer:

''In this respect, respondents allege that experience gained by them and their predecessors in office has shown conclusively that large plants have been able to obtain a larger share of the total amount of sardines allowed for reduction each season than normally would be allotted to them through the simple expedient of dividing reduction machinery and equipment into units within their respective plants and thereby obtain so-called 'multiple permits' within a given plant. Due to many factors, such for example as concealed wiring and piping, it is impractical, if not impossible, for respondents to determine if such units are separate in fact. It is also impractical, if not impossible, for respondents to determine if the facilities of such units are not intermingled and used jointly by the owner during the ensuing sardine season.''

It is clear that these reasons apply with equal force to all plants with several units housed in a single building. It is just as difficult to detect concealed wiring and piping and thereby determine whether the units are in fact separate in a plant which operated such units under permits granted in the previous year as it is in the case of an applicant who this

year is applying for separate permits for more than one unit for the first time. It is just as difficult to determine whether the facilities of such units are intermingled and used jointly by the owner in an old plant as in a new one. The experience upon which respondents rely must have been gained in their attempt to police the very plants which are now given a preference. We can find no justification for placing a more onerous burden upon newcomers to the field because of difficulties of regulation which experience has shown exist in the policing of the plants of the same operators who, in the face of such difficulties, are now placed in a preferred class.

█ Respondents further urge that petitioner is éstopped to attack the rule because he did not object to its formulation, because in his application for a permit he agreed to abide and be bound by the rules, and because others but for the rule might have placed themselves in a position to obtain similar permits for multiple units. What others may have done is no concern of the petitioner. It was equally open to all to question the constitutionality of the rule if they saw fit to do so. Petitioner's agreement to abide by the rules in his application may be assumed to have been forced on him by the respondents as a condition required of all applicants for permits, and in any event should be construed as an agreement to abide by the lawful and valid rules of the commission. No authority is cited to the point that the failure to object to the promulgation of an unconstitutional rule raises an estoppel to attack it afterwards and we are satisfied that the commission has no legal power to place the burden of objecting to a rule at the time of its formulation upon those engaged in the industry under pain of thereafter being estopped to attack its validity.

Let a peremptory writ of mandate issue as prayed.

Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J., Concurring.—In my opinion the writ should issue, but I desire to point out that the unconstitutional discrimination in this case is the same in substance and legal effect as that present by the rule involved in *Ferrante* v. *Fish & Game Commission, ante,* p. 365 [175 P.2d 222]. In both cases arbitrary and unreasonable burdens are placed

upon newcomers in the pilchard sardine industry which are not imposed upon those previously established in the business. There is no reasonable basis for the classification in either case and I reiterate the discussion in my dissent in the Ferrante case.

Schauer, J., concurred.

Respondents' petition for a rehearing was denied December 30, 1946.