33318. COLUMBUS WINE COMPANY *v.* SHEFFIELD.

Decided January 25, 1951. Rehearing denied March 26, 1951.

*Julian Webb, Custer & Kirbo,* for plaintiff.

*P. Z. Geer, E. P. Stapleton,* for defendant.

GARDNER, J. ■ From the foregoing portions of the material evidence, the evidence tended to show that the plaintiff sold this liquor to the defendant, under the assumption that he was acting either as a partner or as an agent or in behalf of W. B. Roberts and the County Line Liquor Store; and that the plaintiff company, a licensed wholesale liquor dealer, did not knowingly sell this order of whisky in violation of Code (Ann. Supp.) § 58-1036, which provides: "It shall be unlawful for such licensee under section 58-1034 to sell or dispose of any such liquors in any county or counties wherein the sale of such liquors is forbidden by the terms of this Chapter, or to sell to any one not holding a wholesale or retail license granted under the terms of this Chapter" (Ga. L. 1937-38, Ex. Sess. pp. 103, 113), which is made a misdemeanor under the act (Code, Ann. Supp., § 58-1069, Ga. L. 1937-38 Ex. Sess., pp. 103, 121). In fact, a jury might well have found, under all the facts, and the conflict in material portions of the testimony, that the defendant was either a partner in the liquor store or had some interest therein, or was acting and had been acting for the store with authority. One of the defendant's witnesses testified: "Mr. Sheffield has been fooling around this business [The County Line Liquor Store] down there as long as I have been connected with it"; and it appeared that he had operated and managed the business for Roberts and the defendant's brother-in-law, Whittle, from August, 1948, to March or April, 1949, when the defendant admitted he acquired the same. The plaintiff's vice-president testified: "When these goods were sent, we invoiced them to W. B. Roberts, the license holder." This witness also testified that the sale was completed at the

County Line Liquor Store. The defendant denied this, and said it was "made in front of the mule barn." The defendant testified that he was not in partnership with "Roberts—I bought Bill Roberts' Liquor Store in May, 1949, kept it about three weeks, and sold it to Ausley"; and there was in evidence the record of a partnership contract between the defendant and Roberts for this liquor store made in June, 1948. The agreement was recorded. The defendant introduced in evidence the original agreement, and on its back under date of August 2, 1948, appeared an assignment by the defendant of his interest in the store to Whittle, his brother-in-law. This was not recorded. The plaintiff's vice-president also testified that it was common knowledge among the liquor dealers that the defendant was a partner in the Roberts' Liquor Store. It appeared without dispute that Sheffield stopped payment on the check given by him to the plaintiff's truck driver for this liquor, which was invoiced to Roberts, the license holder, because the plaintiff was seeking to hold the defendant liable on a debt which arose out of a sale of liquor by the plaintiff to one Josey, to whom the defendant had sold a liquor store, and which the defendant claimed he did not owe; and that the defendant offered to pay this check if the plaintiff would not hold him liable on the Josey claim, which was in suit in Decatur County. "A verdict should not be directed unless there is no issue of fact, or unless the proved facts viewed from every possible point of view, can sustain no other finding than that directed"; and "where there is conflict as to any material issue of fact," it is error to direct a verdict. See *Davis* v. *Kirkland,* 1 *Ga. App.* 5 (58 S. E. 209); Code, §110-104.

Before this court could hold that the transaction whereby the plaintiff sold this lot of liquor was in violation of the Code (Ann. Supp.) § 58-1036, it would have to appear without dispute that the plaintiff company, then a licensed wholesale liquor dealer, knowingly sold to the defendant, who did not have a license to deal in liquor, this lot of liquor, and this does not appear. The transaction was not as a matter of law a palpable violation of the provisions of the act of 1938 (Ga. L. Ex. Sess. 1937-38, pp. 103, 113), as embodied in Code (Ann. Supp.) § 58-1036, insofar as the plaintiff was concerned.

■ But it is contended by the defendant that it appears without dispute that the whisky was delivered by the plaintiff to the defendant at a place other than the County Line Liquor Store, and that the plaintiff agreed so to deliver the liquor; and that, this being in violation of a regulation of the Revenue Commissioner, prohibiting the delivery of liquor at any place other than to the place of business of the person ordering the same, the sale was, as a matter of law, illegal and against public policy. No such rule or regulation of the Revenue Commissioner was introduced in evidence; and this court will not take judicial cognizance of rules and regulations of the commissioner. Furthermore, the act authorizing the sale of liquors in those counties adopting its provision does not prohibit the delivery of liquor sold by a licensed dealer to a place other than the place of business of the buyer. Ga. L. 1937-38, Ex. Sess., pp. 103 et seq. In these circumstances, even though the Revenue Commissioner is given authority to make reasonable rules and regulations for the enforcement and administration of this law (Ga. L. 1937-38, Ex. Sess., pp. 103, 108; Code, Ann. Supp., § 58-1022), the commissioner could not, by regulation, make penal and punish therefor as a misdemeanor, something which is not made penal under the law itself; but he could enforce the regulation only by suspension or cancellation of the license of the offending party or parties. See *Glustrom* v. *State*, 206 *Ga.* 734 (58 S. E. 2d, 534), and also *Bernstein* v. *Peters*, 69 *Ga. App* 525 (26 S. E. 2d, 192). See also *State of Georgia* v. *Schafer*, 82 *Ga. App.* 753 (62 S. E. 2d, 446). It follows that this contention of the defendant is without merit.

■ Counsel for the defendant in error enthusiastically insists that the court did not err in granting the nonsuit, and cites various statutes and decisions to support this contention, among them *Bernstein* v. *Peters*, 68 *Ga. App.* 218 (1-a) (22 S. E. 2d, 614); Code (Ann. Supp.), § 58-1001 (Ga. L., Ex. Sess., 1937-38, pp. 103, 105); and also Code (Ann. Supp.), §§ 58-1011, 58-1022, 58-1024—58-1026, 58-1030—58-1032, 58-1065, 58-1069, 58-1070, and Code §§ 20-501 and 20-504. These last two sections deal with the invalidty of an immoral contract and a contract against public policy. Counsel also cites *Commercial Bank of Athens* v. *Cohen*, 34 *Ga. App.* 756 (1) (131 S. E. 117); *Wright Co.* v. *Haralson*, 52

*Ga. App.* 27 (2) (182 S. E. 55) ; *Garrison* v. *Burns,* 98 *Ga.* 762 (26 S. E. 471) ; *Abbott Furniture Co.* v. *Mobley,* 141 *Ga.* 456 (81 S. E. 196) ; *Harris* v. *Barfield Music House,* 18 *Ga. App.* 444 (89 S. E. 592) ; *Bryson* v. *Keith,* 186 *Ga.* 616 (199 S. E. 110), and cites, in addition, Code §§ 96-101 and 96-107, relating to the essentials of a sale; § 38-402, regarding admissions of pleadings, etc.; § 38-104, with reference to presumptions of law; and a number of decisions, relating to the provisions of the last two Code sections mentioned, which decisions we will not here enumerate. With reference to the contentions of distinguished counsel for the defendant in error, after giving much time and consideration to the facts here involved, and the law called to our attention by counsel both for the defendant in error and for the plaintiff in error, we have reached the conclusion that the weakness in the contentions of the defendant in error is not that the statutes and decisions cited are erroneous as pronouncements of correct principles of law, but the weakness is found in the assumption that the facts of this case invoke their application. As we have observed—as borne out by the evidence quoted hereinbefore— it appears to us clearly that, whether the sale was legal or illegal and whether the defendant Sheffield was an authorized agent of the W. B. Roberts Liquor Store, or a partner therein, presented questions for the jury to determine, and not a matter of law, as to whether or not the defendant Sheffield should prevail.

While, as we have observed, the question of whether the contract of the sale of this whisky was illegal or void, was a jury question, we might here call attention to *White* v. *Crew,* 16 Ga. 416, wherein the Supreme Court said: "Where an illegal or fraudulent contract has been made, neither courts of law or equity will interpose to grant any relief to the parties, but will leave them where it finds them, *if they were equally cognizant of the illegality or participated in the fraud,* unless in cases where the public policy would be promoted." [Italics ours.]

We might well, in this connection, call attention to the fact that, if the defendant Sheffield was in this transaction under a duty to speak to the effect that the liquor in question was not properly invoiced, and he received it when he should have refused it, he is estopped from denying what his silence imports. See *Smith* v. *Folsom,* 190 *Ga.* 460 (9 S. E. 2d, 824) ; *Warner* v.

*Hill,* 153 *Ga.* 510 (112 S. E. 478); *J. R. Watkins Co.* v. *Rivers,* 37 *Ga. App.* 559 (140 S. E. 770); *Wall* v. *Mount,* 121 *Ga.* 831 (49 S. E. 778). There are numerous other decisions to the same effect which we will not cite.

So far as the general grounds are concerned, the court erred in granting a nonsuit.

■ We come next to deal with special ground 6, and quote that ground in full: "Ground 6. Because the court excluded the testimony of the witness, Joe J. Josey, who, after having sworn that a partnership existed between himself and Rupert Sheffield, that—upon conveying the liquor store and stock of liquor to Sheffield, they had an agreement whereby Sheffield was to pay the debts of the business—the question was asked, 'And Mr. Sheffield agreed to assume the debts of the business when he took it over?' The witness answered, 'Yes, sir.' The defendant objected to the testimony of this witness that Rupert Sheffield assumed the payment of the indebtedness upon the ground that, under the statute of frauds and under the law, any promise to answer for the debts, default, or miscarriage of another must be in writing; secondly, upon the ground that the testimony of the witness varies and contradicts the terms of the written agreement between him and Sheffield, in which he conveyed to Sheffield the real estate described in a deed recorded in Deed Book 17, page 496, and all merchandise in the building consisting of liquor and beer and other property in said building, and this transaction cancels all indebtedness of Joe J. Josey to Rupert Sheffield. The objection of the defendant was sustained by the evidence ruled out. Movant insists that certain evidence was admissible, since the fact of partnership had been established by the witness, and both partners were primarily liable for the debts of the business, and the transfer of the partnership assets to one partner supported his primary assumption of the debts of the partnership as between the partners; and that such an agreement did not necessarily have to be in writing, nor is the same within the statute of frauds or at variance with the written contract referred to in the objection. Movant insists that the ruling of the court rejecting this testimony was erroneous."

From the statement of facts it appears that the defendant Sheffield stated in effect that he would be willing to pay the

amount of the check in question if the plaintiff in error would release him in connection with the indebtedness of the liquor business formerly owned by Josey and Sheffield. It appears that Josey transferred his interest in this liquor business to Sheffield. Josey was, according to the record, introduced as a witness in behalf of the plaintiff in error. He testified that such a partnership did exist between the two of them, that a transfer of the business to Sheffield was consummated, and ·that Sheffield did agree to assume the debts of the liquor store so transferred, owing to the plaintiff in error. Both of them are primarily liable to the plaintiff in error for this partnership debt. It seems to us that any transaction as between them could not affect the debt owing to the plaintiff in error. As a member of the partnership, the defendant in error was primarily liable for this partnership debt; and, since the indebtedness of the partnership was given by the defendant Sheffield as a reason for not paying the debt in question, the evidence of Josey should have been allowed to go to the jury even though it involved a minor and collateral issue. Under the record of this case, the exclusion of this testimony was harmful and reversible error.

*Judgment reversed. MacIntyre, P.J., and Townsend, J., concur.*