[L. A. No. 21422. In Bank. June 29, 1951.]

KNUDSEN CREAMERY COMPANY OF CALIFORNIA (a Corporation), Appellant, v. A. A. BROCK, as Director of Agriculture, etc., Respondent.

Vaughan, Bradlin & Wehrle, J. R. Vaughan and Pat B. Trapp for Appellant.

Fred N. Howser and Edmund G. Brown, Attorneys General, and Walter L. Bowers, Assistant Attorney General, for Respondent.

SPENCE, J.—Plaintiff sought declaratory relief for the purpose of testing the validity of an order issued by defendant, as Director of Agriculture, affecting the minimum price schedule for fluid milk distributed under the Stabilization and Marketing Plan governing the San Diego County Marketing Area. The trial court determined that the order was within the power and jurisdiction of defendant, and that its enforcement was not open to constitutional objection. For the reasons hereinafter stated, we are of the opinion that the trial court properly adjudicated the problem presented and that the judgment in favor of defendant should be affirmed.

Plaintiff is a creamery company distributing fluid milk and fluid cream. It maintains a plant in the city of Los Angeles, where it processes, pasteurizes and packages, in containers for resale, milk which it purchases from various producers. It also maintains in the city of San Diego a plant where it handles and distributes, but does not process or package milk. In supplying this area, plaintiff follows this procedure: milk is purchased from producers in Los Angeles and adjoining counties, delivered to plaintiff's Los Angeles plant for processing and packaging, and then loaded on refrigerated vans in Los Angeles for transportation to the San Diego plant. Approximately 5 per cent of the fluid milk so handled at the Los Angeles plant is transported to the plant in San Diego for distribution in that county. The San Diego County Marketing Area is not self-sufficient in its milk production and approximately 20 per cent of the milk consumed there must be brought from producers' dairies located elsewhere.

The Milk Control Act (Agr. Code, div. 4, ch. 10) authorizes the Director of Agriculture to designate marketing areas "wherein he finds the conditions affecting the production, distribution and sale of fluid milk , . . . are reasonably uniform." (Agr. Code, § 736.) The counties of Los Angeles and San Diego have been designated respectively as marketing areas, and stabilization and marketing plans have been formulated establishing minimum prices which distributors must pay producers. (Agr. Code, § 736.1.) The minimum price to the producer is governed by the price fixed in the particular marketing area wherein the milk is sold and delivered to the consumer. (Agr. Code, § 736.3.)

Pursuant to proceedings had as required by the act, the Stabilization and Marketing Plan for the San Diego County Marketing Area was amended and Order No. 26 was issued by defendant effective April 1, 1949. As so amended, the plan establishes a minimum price to be paid by distributors for fluid milk purchased "f.o.b. distributor's plant" and provides that "any distributor who purchases, receives or otherwise handles . . . fluid milk at producer's dairy location . . . for sale or distribution within the San Diego County Marketing Area may deduct from the minimum price specified . . . an amount . . . not in excess of the lowest rate for transportation of said commodity then in effect for public carrier . . . from point or points of shipment to such distributor's plant within the Marketing Area." A distributor's

plant is defined in the order as "any building in which milk is received, weighed, tested, and processed for distribution to consumer."

Plaintiff's plant in San Diego is used solely for storage and distribution, a so-called "milk depot" or "relay station." By reason of the fact that no milk is processed for distribution in its San Diego plant, plaintiff has no "distributor's plant" in the San Diego County Marketing Area, as the term is defined in Order No. 26. Therefore in computing the minimum price payable to producers for the milk sold in that area, plaintiff is permitted to deduct only the freight charges to its "distributor's plant" in Los Angeles, where the milk is halted for processing, rather than to its San Diego plant, where the milk is sent finally for storage and ultimate distribution.

Plaintiff's attack upon Order No. 26 is based upon the claim that it is arbitrary and unreasonable, in contravention of its constitutional rights, and is in conflict with the state law on the subject, the Milk Control Act. In this connection plaintiff contends that the order is unconstitutional class legislation in that its effect is to prescribe one minimum producer's price for a marketing area applicable to distributors whose processing facilities are located within the marketing area and another, higher minimum producer's price for the same marketing area, applicable to distributors whose processing facilities are located outside the marketing area; that this price differential creates a condition of competitive inequality, with higher cost factors resulting in its distribution of milk at a loss, forcing it to choose between two alternative courses—(1) cease distribution in the area because of inequality of competitive opportunity and so promote local monopoly, or (2) incur the unnecessary expense of building a processing plant within the marketing area; and that the added consideration of processing facilities, in qualification of a "distributor's plant," transcends the scope of the act in the field of price regulations for milk distribution. The trial court found, in substance, that Order No. 26 was a valid and authorized stipulation in the practical classification of a "distributor's plant" for price-fixing purposes; that plaintiff's San Diego plant is in effect a "milk depot" and the Los Angeles plant, where the bulk milk is processed en route to the San Diego County Marketing Area, is the "distributor's plant" fixing the limit of freight allowance for plaintiff in its cost computation for milk distribution in that area; and

that no constitutional rights of plaintiff are violated in the enforcement of the regulatory order as part of the Stabilization and Marketing Plan for the San Diego County Marketing Area. From the judgment thereupon rendered in favor of defendant, plaintiff appeals.

The purposes of the Milk Control Act are, among others, to "authorize and enable the director to prescribe marketing areas and to determine prices to producers for fluid milk or fluid cream, or both, which are necessary due to varying factors of costs of production, health regulations, transportation and other factors in said marketing areas of this State, provided that the cost to distributors within any marketing area, for fluid milk or fluid cream shall be uniform with all other distributors purchasing fluid milk and fluid cream of similar grade or quality *under like terms and conditions*" (Agr. Code, § 735.1(b); emphasis added) and to "eliminate economic disturbances and unfair trade practices in the milk industry which threaten both the quality and adequacy of the supply of fluid milk and cream." (*In re Willing*, 12 Cal.2d· 591, 594 [86 P.2d 663].)

The act is aimed primarily at what the producer shall receive, and not at what the dealer or consumer shall pay. (*United Milk Producers* v. *Cecil*, 47 Cal.App.2d 758, 768-769 [118 P.2d 830].) In prescribing minimum prices to be paid by distributors the director must take into consideration "for the marketing area involved . . . the additional costs incurred in producing and *marketing* fluid milk over and above such costs incurred in producing and marketing manufacturing milk." (Agr. Code, § 735.4(b)(4); § 736.3 (b); emphasis added.) A distributor is defined as "any person, whether or not such person is a producer or an association of producers, who purchases or handles fluid milk or fluid cream for sale, including brokers, agents, copartnerships, cooperative corporations and incorporated and unincorporated associations." (Agr. Code, § 735.3(f).)

It is manifest from these provisions that *marketing* costs are part of the formula establishing the minimum price payable to the producer, but such costs, as correlated with the producer, would reasonably extend no further than the point of delivery to the distributor. In other words, the act appears to fix delivery of the raw milk to the distributor as a marketing cost affecting the price payable, but any costs incurred beyond that point would be allocable as a distribution rather than a production factor. This is a reason-

able distinction in recognition of the distributor as constituting the "market" for the producer, and the "distributor's plant" would be the normal place where the distributor would take delivery., At such plant the raw milk passes entirely under the control of the distributor, and thereafter, following processing and packaging, it is transported to the area for sale to the consumer. While ordinarily both (1) the producer's market—that is, the distributor—and (2) the distributor's market—that is, the consumer—would be within the same area, the choice of the latter market is a matter wholly within the selection of the distributor and in the event he chooses to ship the finished product to another area for sale, the freight expense would properly appear to be a charge that he should bear, a "marketing cost" over which the producer would have no control.

The act's designation of "marketing areas" wherein the "conditions of production, distribution and sale are reasonably uniform" is in recognition of the fact that there is no general statewide movement of fluid milk, which would permit prices and related conditions of production and distribution to be uniform throughout the state rather than to be uniform only within particular marketing areas. While the producer is free to deliver his milk to any distributor in the state that he selects, and by his contract with the distributor he can provide for delivery at a designated plant, the marketing expense incurred beyond that point is at the option of the distributor in disposing of the finished product in any ultimate marketing area or areas. Accordingly, in the establishment of a minimum price payable to the *producer* in a given marketing area, the director must take into account the reasonable cost of transportation by the producer to the distributor as a production factor. But if after delivery of the milk to the distributor at his plant, the latter could choose a distant market for ultimate disposition and at the same time charge the added transportation cost to the producer as an item of marketing expense, though related wholly to the finished product, then the producer would be entirely at the mercy of the distributor, and there again would prevail the destructive competitive practices which the adoption of the act was intended to eliminate in protection of the producer in the measure of his financial return for his raw product. (*United Milk Producers* v. *Cecil, supra,* 47 Cal.App.2d 758, 762.)

■ The status of plaintiff as a licensed "distributor" of milk in this state, according to the terms of the act (Agr. Code, § 735.3(f)), is in nowise affected by Order No. 26 issued by the director in definition of a "distributor's plant." In fact, under the act a broker or agent may be a distributor without having any processing plant or being a processor. Whether plaintiff maintains as part of its distribution system in respective marketing areas a "milk depot" for storage purposes as distinguished from a "distributor's plant," where processing of the raw milk is performed, is immaterial insofar as concerns its classification as a "distributor." Unquestionably as a "distributor" under the act's definition, it is entitled to all the benefits that accompany that status, but it is likewise subject to the attending burdens. ■ To this point plaintiff argues that the act's requirement that cost to the distributor must be uniform with that of all other distributors in the same area purchasing milk under like terms and conditions (Agr. Code, § 735.1(b)) sustains plaintiff's deduction of the cost of transporting the milk in bulk form from the producers' dairies to its San Diego distributing point; that otherwise its cost is not uniform with that of other distributors in the San Diego County Marketing Area. But in this contention plaintiff loses sight of the fact that its position in that marketing area is to be differentiated from that of other distributors maintaining plants there with processing facilities, and it is this fact which demonstrates that plaintiff is not purchasing milk under the same terms and conditions as these other distributors. Order No. 26 does not purport to require the maintenance of processing facilities in any marketing area as a condition for classification of a person as a "distributor" in that area. It is only as a practical matter of administrative regulation and as an independent consideration affecting the establishment of minimum prices payable to producers that the definition of a "distributor's plant" to include processing facilities comes into play.

■ . It is the function of the Legislature to declare a policy and fix the primary standard. To promote the purposes of the legislation and carry it into effect, the authorized administrative or ministerial officer may "fill up the details" by prescribing administrative rules and regulations (*First Industrial Loan Co.* v. *Daugherty*, 26 Cal.2d 545, 549 [159 P.2d 921]), but as so empowered, he may not "vary or enlarge the terms or conditions of [the] legislative enactment" (*Boone* v. *Kingsbury*, 206 Cal. 148, 161 [273 P. 797]; also *Whitcomb*

*Hotel, Inc.* v. *California Emp. Com.*, 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405]) or "compel that to be done which lies without the scope of the statute." (*First Industrial Loan Co.* v. *Daugherty, supra,* p. 550.) ▮▮ However, Order No. 26 does not transcend the scope of the statute by adding a qualification to the statutory definition of a "distributor," for plaintiff's status thereunder remains the same regardless of the location of its plant for receiving or processing the milk. Rather, Order No. 26 wholly harmonizes with the act in fixing the terminal point of the producer's responsibility for conveyance of the milk to the place of delivery to the distributor for the latter's ultimate disposition to any marketing area of his own choice. As so envisaging the finished milk product, Order No. 26 defines a "distributor's plant" to encompass processing operations and other handling by the distributor as distribution factors, and any transportation of milk to a distant marketing area thereafter would be an expense item likewise chargeable as a distribution factor, having no bearing on the computation of minimum prices payable to the producer as a production factor.

▮▮ Plaintiff argues that the enforcement of Order No. 26 would tend to develop conditions of local monopoly in the marketing area contrary to the express terms of the Milk Control Act. (Agr. Code, § 735.1.) To this point it contends that the order operates to promote the establishment of processing facilities in the local marketing area where the milk is sold to the exclusion of distributors whose processing facilities are located in a different marketing area. In support of its position, plaintiff cites instances where municipal ordinances prohibiting the sale of pasteurized milk within the city unless the pasteurization has been done within the city limits, or within a specified distance thereof, have been declared invalid. (*La Franchi* v. *City of Santa Rosa*, 8 Cal.2d 331 [65 P.2d 1301, 110 A.L.R. 639]; *Van Gammeren* v. *City of Fresno*, 51 Cal.App.2d 235 [124 P.2d 621]; *Meridian, Ltd.* v. *Sippy*, 54 Cal.App.2d 214 [128 P.2d 884].) But the cited cases are clearly distinguishable on the premise that they involved an absolute prohibition in the sale of milk within the particular area unless the terms of the ordinance were satisfied in reference to the place of pasteurization. (See *Natural Milk Producers Assn. of California* v. *City and County of San Francisco*, 20 Cal.2d 101, 112 [124 P.2d 25].) Here there is no like element of complete exclusion of plaintiff from the San Diego County Marketing Area, for plaintiff is not required

to process its milk within that area in order to distribute its milk there. No trade barrier has been erected by Order No. 26 in restriction of plaintiff's exercise of its choice in operating in whatever marketing area it deems profitable, and the return from its enterprise remains dependent on its own "industry and efficiency" in the distribution field. (*Ray* v. *Parker*, 15 Cal.2d 275, 284 [101 P.2d 665]; also *Pacific States Box & Basket Co.* v. *White*, 296 U.S. 176, 183-184 [56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853].) Likewise, Order No. 26 is not promotive of a "creeping" monopoly (*International Salt Co., Inc.* v. *United States*, 332 U.S. 392, 396 [68 S.Ct. 12, 92 L.Ed. 20]; also, *Carter Carburetor Corp.* v. *Federal Trade Com.*, 112 F.2d 722, 733), for plaintiff is free to operate on the same basis and under the same conditions as other distributors in the marketing area, having its processing facilities a part of its "distributor's plant" there and accordingly entitled to require the producer from whom it purchases the milk for delivery there to pay the cost of conveying it to such plant within that marketing area.

Nor, as plaintiff claims, does Order No. 26 violate the due process and equal protection clauses of the Fourteenth Amendment of the federal Constitution, or sections 1, 11, 13 and 21 of article I of the state Constitution, because of an alleged discrimination in competitive opportunity in the field of milk distribution. An administrative order, legislative in character, is subject to the same tests as to validity as an act of the Legislature. (42 Am.Jur. § 98, p. 427; *Arizona Grocery Co.* v. *Atchison, T. & S. F. R. Co.*, 284 U.S. 370, 388 [52 S.Ct. 183, 76 L.Ed. 348]; *Pacific States Box & Basket Co.* v. *White, supra,* 296 U.S. 176, 185-186.) The fallacy in plaintiff's argument lies in the failure to distinguish between equality of opportunity and ability to take advantage of the opportunity that is offered to all. Order No. 26 is applicable alike to all distributors in the state in the regulation of milk distribution, conferring equal rights and imposing equal burdens coincident with the location of the "distributor's plant" where the processing facilities are maintained. So long as such order "does not permit one to exercise the privilege while refusing it to another of like qualifications, under like conditions and circumstances," there is no inequality or objectionable discrimination in a constitutional sense. (*Watson* v. *Division of Motor Vehicles,* 212 Cal. 279, 284 [298 P. 481].) It apparently is true that in not being allowed to deduct the transportation charge from the producer's dairy

to its plant in San Diego, where the milk is ultimately sold and for which plaintiff must pay the minimum price scheduled for that marketing area, plaintiff is operating at a competitive disadvantage attributable to the added freight cost. But plaintiff's method of operation with its milk processing performed at its Los Angeles plant is at plaintiff's choice, and economic losses as such are not a barrier to the validity of an administrative regulation issued in pursuance of legislation enacted in the exercise of the police power. (*United States* v. *Rock Royal Co-Operative, Inc.*, 307 U.S. 533, 565-567 [59 S.Ct. 993, 83 L.Ed. 1446].) So pertinent is the case of *Wawa Dairy Farms* v. *Wickard*, 149 F.2d 860, where the validity of a "milk order" issued by the Secretary of Agriculture was sustained in the face of plaintiff's claim that it was confiscatory in that it authorized certain deductions from the fixed minimum price payable by handlers (distributors) to producers of milk according to the location of milk receiving facilities in the defined area, putting plaintiff handler at a competitive disadvantage and depriving him of a profit in the operation of his business. The court there aptly said at page 863: "The Fourteenth Amendment does not protect a business against the hazards of competition."

Plaintiff cites instances where classifications in milk laws have been held unconstitutional because they were without "reasonable and substantial basis." (*Mayflower Farms* v. *Ten Eyck*, 297 U.S. 266 [56 S.Ct. 457, 80 L.Ed. 675]; *Challenge Cream & Butter Assn.* v. *Parker*, 23 Cal.2d 137 [142 P.2d 737, 149 A.L.R. 1203].) Such objection does not prevail here, for Order No. 26, in its transportation allowance according to the location of the "distributor's plant," is a reasonable regulation in effecting the economic marketing of milk throughout the state pursuant to recognized standards of expense in relation to production and distribution factors. The enforcement of the order is therefore constitutionally unobjectionable. (See *Del Mar Canning Co.* v. *Payne*, 29 Cal.2d 380, 382-383 [175 P.2d 231].) Considering the complexities of the administration of the Milk Control Act and the plain intent of the Legislature to give to the director a wide discretion in formulating regulations for the effective production and distribution of milk throughout the state, Order No. 26 must be sustained as a reasonable stipulation in implementing the marketing program on a minimum price schedule assuring security to producers of this essential product in protection of the public welfare. (*Queensboro Farms*

*Products, Inc.* v. *Wickard,* 137 F.2d 969, 980; *In re Willing, supra,* 12 Cal.2d 591, 594; *Natural Milk Producers Assn. of California* v. *City and County of San Francisco, supra,* 20 Cal.2d 101, 114-115; *United Milk Producers* v. *Cecil, supra,* 47 Cal.App.2d 758, 769.)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., and Traynor, J., concurred.

EDMONDS, J.—For the purposes of the Milk Control Act, the Legislature has defined a distributor as "any person . . . who purchases or handles fluid milk or fluid cream for sale, including brokers agents, copartnerships, cooperative corporations and incorporated and unincorporated associations." (Agr. Code, § 735.3.) There is no requirement that a distributor must maintain a plant of any kind; indeed, the inclusion of a broker or an agent within the definition shows a contrary intention. The Director of Agriculture has changed the statutory plan by restricting the right to do business as a distributor to one who maintains a building "in which milk is received, weighed, tested and processed for distribution to consumer." (Order No. 26.) I find no legal basis to support a modification of the statute by the director placing a greater restriction upon the manner in which a distributor may conduct his business than the Legislature has authorized or intended.

The opinion of Mr. Justice Wilson upon which this case was decided by the District Court of Appeal clearly and succinctly states the reasoning which underlies my conclusions. I quote from it as follows:

"It is the function of the Legislature to declare a policy and fix the primary standard. To promote the purposes of the legislation and carry it into effect it may authorize an administrative or ministerial officer to 'fill up the details' by prescribing administrative rules and regulations. (*First Industrial Loan Co.* v. *Daugherty,* 26 Cal.2d 545, 549 [159 P.2d 921].) The rule is established, however, that a ministerial officer may not, under the guise of a rule or regulation thought necessary to carry out the purpose of an act, vary or enlarge the terms or conditions of the legislative enactment nor compel that to be done which lies without the scope of the statute. (*First Industrial Loan Co.* v. *Daugherty, supra; Whitcomb Hotel, Inc.* v. *California Emp. Com.,* 24 Cal.2d 753,

757 [151 P.2d 233, 155 A.L.R. 405]; *Boone* v. *Kingsbury,* 206 Cal. 148, 161 [273 P. 797].)

"The Legislature in defining a distributor has not included in the definition any requirement that he process the milk. Any person 'who purchases or handles fluid milk or fluid cream for sale, including brokers, agents. . . .' is a distributor. (§ 735.3(f).) Thus a broker or an agent may be a distributor without having any processing plant or being a processor. Section 735.3 containing definitions, including that of distributor, was added to the code in 1935. (Stats. 1935, ch. 241, p. 922.) That section has been amended six times (Stats. 1937, ch. 3, p. 44; ch. 57, p. 151; Stats. 1939, ch. 941, p. 2641; Stats. 1941, ch. 1214, p. 3008; Stats. 1945, ch. 1001, p. 1930; Stats. 1949, ch. 1400, p. 2444) but in none of the amendments has the Legislature changed the definition of distributor so as to require him to maintain a processing plant in the marketing area in which he distributes fluid milk nor has it indicated any such intent or authorized the director to make any such requirement.

"Neither the place of receiving the milk nor the place of processing is recognized by the Legislature in setting the standards under which the director must operate. Under section 736.3 every producer is entitled to the price established for the marketing area in which his milk is finally sold and distributed and he must bear the cost of conveying his product to that area. The cost to the distributor must be uniform with that of all other distributors in the same area purchasing milk under like terms and conditions. (§ 735.1 (b).) The director in defining a distributor's plant has added a requirement that the milk be processed in the plant in order that the distributor may deduct the cost of transportation from the producer's dairy to his plant. He has thereby established a separate classification of processor-distributor and the cost to the distributor is not uniform with that of other distributors in the area unless he falls within such classification. If the director can define a distributor's plant as a building where milk is received, weighed, tested and processed for distribution he could as well enlarge the definition to include other functions not required by statute. He is without authority or jurisdiction so to vary the terms of the Milk Control Act.

"Respondent asserts that since appellant does not have a processing plant in the San Diego Marketing Area it is not purchasing milk 'under the same terms and conditions' as

other distributors. That appellant has a different operating procedure from other distributors in that it chooses to process its milk at a place other than where it is distributed does not affect the terms and conditions under which it *purchases* milk.

"Respondent has not pointed out any substantial difference in the terms or conditions under which appellant purchases its milk from producers from the terms and conditions under which those distributors having processing plants in the area purchase milk. Appellant purchases quantities of milk for distribution in San Diego County for which it must pay the minimum producer price. The point at which milk is received does not in any way affect that minimum price, nor does the place of processing the product affect the conditions of purchase, since the only transportation charge which appellant is permitted to deduct from the minimum price to the producer is the cost of transporting the milk in bulk form from the dairy to its plant within the marketing area of sale and distribution to the consumer. Contrary to respondent's contention, appellant is not seeking to deduct the cost of transporting the milk in packaged form to its San Diego plant. The fact that it stops the milk en route for the purpose of processing it should in nowise affect the rights to which it is entitled by statute.

"Respondent's contention that the producer might be compelled to pay the cost of transportation of his product to any point in the state is without merit. The evidence is clear that there is not sufficient milk produced in San Diego County Marketing Area to supply the requirements of that area and that about 20 per cent of the milk distributed there must be brought in from other areas. The producer need not contract to sell his product in the San Diego area if the cost of transportation would make it unprofitable. Upon the other hand, the producer might find it more profitable to pay the cost of transportation if he can thereby obtain the price for class 1 or class 2 milk which has a higher minimum price than that of class 3 or 4."

For these reasons, I would reverse the judgment with directions to the trial court to make findings and conclusions and enter judgment as follows: That Knudsen Creamery Company is a distributor within the San Diego County Marketing Area; that the definition of "distributor's plant" in Order 26 is void; and that Knudsen Creamery Company may deduct from the amounts paid to producers for milk purchased

for sale or distribution within the San Diego County Marketing Area the minimum cost of transportation by public carrier from the point of shipment to the Knudsen plant at San Diego.

Schauer, J., concurred.

Appellant's petition for a rehearing was denied July 26, 1951. Edmonds, J., and Schauer, J., voted for a rehearing.