[Civ. No. 9308. Third Dist. May 14, 1958.]

THE PEOPLE, Respondent, v. HARTER PACKING COMPANY (a Corporation), Appellant.

Weis & Weis and Steel & Arostegui for Appellant.

Edmund G. Brown, Attorney General, Paul M. Joseph and John E. Fourt, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—Harter Packing Company, a processor of cling peaches, appeals from a judgment in the amount of $5,093, entered against it because of its failure to comply with the provisions of a Marketing Order For Canning and Freezing Cling Peaches issued by the Director of Agriculture. By the terms of the order, producers of cling peaches were paid by a processor only for cling peaches certified as Number 1. The processor in turn was required to divert, dump, or dispose of, other than by canning, an amount of peaches received by the processor equal to the aggregate amount of peaches delivered by producers which were not certified Number 1. The market order provided further that:

"For any quantity of cling peaches which any processor has failed to divert pursuant to the provisions of this Section such processor shall make payment for such peaches by paying to the Board a sum based upon the number of tons of cling peaches which said processor failed to so divert and computed at the rate per ton represented by the price paid by such processor to producers for Number 1 Cling Peaches.

"Failure to divert the proper quantity of cling peaches as required in this Section shall subject any such processor to the applicable legal procedures and penalties of the Act. For the purpose of establishing a proper basis for determining the number of violations in each case in which any processor fails to divert cling peaches in the quantity required pursuant to the provisions of this Section, each five (5) tons, or portion thereof, of cling peaches owed by any processor to the Board for diversion purposes and remaining undiverted at the close of a processing season shall be considered to represent a single diversion obligation and a separate violation of the diversion requirements of this Marketing Order."

During the canning season of 1954 Harter received some 280 tons of off grade peaches and failed to divert some 92.6 tons, as required by the order, prior to the completion of its processing season for cling peaches. An action was brought

by the people of the state of California against Harter to impose in count one the civil penalty of $500 provided by section 1300.19, subdivision (b), of the Agricultural Code for Harter's failure to divert the required tons of peaches; to impose in count two liability in the amount of $5,093 in accordance with the provisions of the marketing order, and to enjoin Harter from violations in the third count. Judgment was given in favor of Harter as to counts one and three and judgment against it was given on count two. No appeal was taken by plaintiff from the court's judgment in favor of Harter on the first and third causes of action, and this appeal is concerned only with the judgment rendered against Harter on count two.

Appellant, Harter, challenges the validity of the marketing order insofar as it required processors to pay a sum equal to the number of tons of peaches not diverted. It is admitted that Harter agreed to the order prior to the time it became effective, and it is also admitted that Harter was a processor of cling peaches and subject to the market order in question here. No attack is made on the authority of the Director to make marketing orders or the validity of any provision of the order other than the one in question.

The California Marketing Act of 1937 (sections 1300.10 to 1300.29, inclusive, of the Agricultural Code) provides a method for the marketing of agricultural products in such a manner as to promote the agricultural industry of this state. Section 1300.15 sets forth the permissible provisions which a marketing order may contain. It reads in part (subdivision (b)): "Subject to the legislative restrictions and limitations set forth herein any marketing order issued by the director pursuant to this chapter may contain any or all of the following provisions for regulating or providing methods for regulating producer marketing or the handling or any of the operations of processing or distributing by handlers of any agricultural commodity within this State, *but no others.*" (Emphasis added.) These include provisions for the control of surplus including the creation of a stabilization fund; provisions for limiting the total quantity of any agricultural commodity which may be marketed; provisions for allotting the quantity which each handler may purchase; provisions for allotting the quantity which may be processed; provisions for regulating the period during which a commodity may be processed; provisions for the establishment of surplus, stabilization, or surplus by-product pools; provisions for the estab-

lishment of uniform grading and inspection; provisions relating to the prohibition of unfair trade practices (reading in part: "the director is authorized to include in any marketing order . . . provisions designed to correct any trade practice affecting the processing, distributing or handling of any agricultural commodity . . . which the director finds, after a hearing thereupon in which all interested persons are given an opportunity to be heard, is unfair and detrimental to the effectuation of the declared purposes of this chapter."); provisions for advertising and sales promotion, and provisions for research studies. It does not include any provision for payment of funds for failure to comply with a marketing order.

Section 1300.19 provides for the administration and enforcement of the act. It reads in part:

"The following penalties, remedies and procedures and actions shall apply in instances of violations . . . of the provisions of this chapter or any marketing order issued by the director. . . .

"(a) Every person who violates . . . any provision of any marketing order . . . shall be guilty of a misdemeanor.

"(b) Every person who violates . . . any marketing order . . . shall be liable civilly for a penalty in an amount not to exceed a sum of five hundred dollars ($500) for each and every violation thereof.

"(h) Upon compliance with section 527 of the Code of Civil Procedure . . . if judgment be in favor of plaintiff, the court shall permanently enjoin defendant from further violations.

"(m) The penalties and remedies prescribed in this section with respect to any violation mentioned in this section shall be concurrent and alternative and neither singly nor combined shall the same be exclusive and either singly or combined the same shall be cumulative with any and all other civil, criminal or administrative rights, remedies, forfeitures or penalties provided or allowed by law with respect to any such violation."

 We do not believe that the California Marketing Act of 1937 authorized the director to insert in any marketing order a provision such as the one here under attack. The provision is a sanction or penalty not authorized by the act.

 An administrative agency is a creature of statute and only possesses such powers as may be conferred upon it. If the act under which the administrative agency gets its powers provides no sanctions or penalties for failure to comply, the

agency may not by rule promulgate them. (*Gardner* v. *Ewing*, 88 F. Supp. 315, affirmed 185 F.2d 781, reversed in part on other grounds, 341 U.S. 321 [71 S.Ct. 684, 95 L.Ed.2d 968]. See also *Columbus Wine Co.* v. *Sheffield*, 83 Ga.App.593 [64 S.E.2d 356].) In the absence of authority an agency may not impose sanctions for failure to comply with its order. ▮ It is well settled that a ministerial officer under the guise of a rule or regulation may not vary the terms or conditions of a legislative enactment. (*Knudsen Creamery Co.* v. *Brock*, 37 Cal.2d 485 [234 P.2d 26] ; *Cullinan* v. *McColgan*, 80 Cal.App. 2d 976, 980 [183 P.2d 115].)

▮ Section 1300.19 of the act, as hereinbefore set forth, enumerates the penalties for violation of the Act and of ''any marketing order issued by the director.'' Violation of any marketing order is declared a misdemeanor and the Act also provides that as a civil penalty a person violating any marketing order ''shall be liable in an amount not to exceed the sum of five hundred dollars ($500) for each violation.''

We do not believe that the director could enlarge upon these provisions and provide a different penalty for a violation of the marketing order. In the instant case the marketing order provided as a penalty that the processor should pay to the Board for the number of tons diverted at the price of Number 1 cling peaches, which was a different civil penalty from the one authorized by the act, and the court rendered judgment in accordance with said provision of the marketing order.

Respondent State of California contends that the section providing for the imposition of damages for a failure to divert peaches constitutes a reasonable and valid regulation intended to prevent the processor from unjustly enriching himself at the producer's expense. We are not here concerned with the asserted reasonableness of the order but with the authority of the director to make it, and that authority must come from the act. We believe that such authority is lacking. Furthermore, the act would prevent any unjust enrichment of the processor because a civil penalty of not to exceed $500 is provided for each violation of a marketing order, and the order provides that the diversion of each five tons of peaches or portion thereof constitutes a separate violation. Applying the provisions of the act to the instant case the 92.6 tons would make 19 separate violations of the marketing order and could subject appellant to a civil penalty of as much as $9,500.

▮ Respondent contends further that the appellant, by accepting the benefits of the marketing order, is estopped to

deny its validity. The trial court found that the appellant Harter Packing Company, having assented to the terms and conditions of the marketing order, and having accepted its benefits for the years 1954, 1955, and 1956, had waived its right to attack the validity of the marketing order and was estopped to question its validity.

We do not believe that estoppel may be invoked in a case such as this where the order issued by the director was not authorized by the Act and where it was contrary to the penalty specifically provided in the Act. What was said in *Del Mar Canning Co.* v. *Payne*, 29 Cal.2d 380, at page 384 [175 P.2d 231], is apposite:

"Respondents further urge that petitioner is estopped to attack the rule because he did not object to its formulation, because in his application for a permit he agreed to abide and be bound by the rules, and because others but for the rule might have placed themselves in a position to obtain similar permits for multiple units. What others may have done is no concern of the petitioner. It was equally open to all to question the constitutionality of the rule if they saw fit to do so. Petitioner's agreement to abide by the rules in his application may be assumed to have been forced on him by the respondents as a condition required of all applicants for permits, and in any event should be construed as an agreement to abide by the lawful and valid rules of the commission. No authority is cited to the point that the failure to object to the promulgation of an unconstitutional rule raises an estoppel to attack it afterwards and we are satisfied that the commission has no legal power to place the burden of objecting to a rule at the time of its formulation upon those engaged in the industry under pain of thereafter being estopped to attack its validity."

Our conclusion is that the provision of the marketing order here under attack and upon which the judgment in favor of respondent on count two of the complaint is based was not authorized by the act and is invalid. This requires a reversal of the judgment.

The judgment is reversed.

Peek, J., concurred.

VAN DYKE, P. J.—I dissent from that portion of the majority opinion which holds invalid the provisions of the marketing order requiring that a processor who fails to divert shall pay for the peaches he unlawfully processes and sells by

paying to the board a sum based upon the number of tons of peaches which he failed to divert, computed at the rate per ton represented by the price paid by the processor to producers for Number 1 Cling Peaches.

The majority hold that this provision is invalid because it is a penalty beyond the power of the board to declare and because it is not within the legislative permission of what a marketing order may provide. In my view, it is neither a penalty nor without the legislative permission. Section 1300.15 of the Agricultural Code provides that any marketing order issued by the director may contain, among other things, provisions for ''equalizing the burden of such surplus elimination or control among the producers, processors, distributors or other handlers affected.'' I believe the provisions of the marketing order under attack come squarely within the legislative permission thus granted. It is part and parcel of the entire scheme for controlling the amount of any agricultural commodity which shall reach the market and it may well have been considered by the director, and those in the industry who approved it, as the most effective means of protecting the industry from the unlawful marketing of surpluses. Under the provisions of the Marketing Act, the cost of eliminating surpluses and off-grade produce is borne by the industry being regulated. Assessments are levied upon producers and processors and the funds so obtained are paid into an administrative fund to defray the cost of enforcing the provisions of the act and of the marketing orders adopted thereunder. In the instant case the provision attacked provides an additional source of funds for such enforcement which, when collected and placed in the administrative fund, redounds to the benefit of the industry as a whole, just as do the assessments and any other funds collected for that purpose. A processor who violates the provisions of the order forbidding the canning and disposal into the market of off-grade peaches has paid nothing for the fruit he thus illegally commits to the market. He cannot pay the producers from whom he obtained the off-grade fruit and it is, therefore, in no sense a penalty that he be compelled, if he violates the order and processes and sells off-grade fruit, to pay into the admininstrative fund for the benefit of the industry he has thus injured the same price per ton as all other processors have had to pay for the fruit they lawfully processed and marketed. The offending processor has received full consideration for the fund he is required to pay. He is in no sense penalized.

Such payment directly tends to equalize the burden of surplus elimination and control in the industry. I think that we have here nothing that smacks of penalty; that we have a provision coming squarely within the legislative authorization which permits the order to contain provisions which equalize the burden of control.

I agree with what the majority say concerning the lack of estoppel, but I would affirm the judgment for the reasons hereinbefore stated.

Respondent's petition for a hearing by the Supreme Court was denied July 9, 1958. Traynor, J., was of the opinion that the petition should be granted.