JAMES HEIMBICHNER, Plaintiff and Respondent, *v.*
MONTANA MILK CONTROL BOARD, et al., Defendants
and Appellants.

No. 9895.

332 Pac. (2d) 922.

Submitted May 28, 1958. Decided Dec. 9, 1958.

Geoffrey L. Brazier, Helena for appellant.
Charles V. Huppe, Helena, for respondent.
John W. Bonner, Helena, amicus curiae.

MR. JUSTICE ANGSTMAN:

This action was commenced by the plaintiff, James Heimbichner, to restrain the Montana Milk Control Board and its members from certain allegedly illegal acts.

The Board filed its general demurrer to the complaint, together with a motion to quash, on the grounds that the complaint failed to state a cause of action. The court overruled both the demurrer and motion to quash. Counsel for the Board elected to stand on the motion and demurrer and agreed that judgment could be had upon the facts established by the complaint.

The court entered judgment for the plaintiff, permanently enjoining and restraining the Board from further action in respect to the alleged illegal acts complained of in the complaint. From this judgment the Board has appealed.

The complaint challenges the Board's action in three respects.

The first question is: Whether or not price order No. 191, promulgated by the Board on October 8, 1957, was in violation of section 27-407, subd. (b), R.C.M. 1947.

Order 191 fixed: (1) The retail price for a single quart price of regular milk in either glass or paper container at 24 cents;

(2) The retail price for a multiple quart sale of regular milk at 92 cents for four quarts or 23 cents for each individual quart sold in the multiple sale;

(3) The price to be paid the producer by the distributor for one pound of butterfat as contained in Class One milk, carrying 3.5 percent butterfat at $1.53.

The result of the proposed prices set forth above is that the producer will be paid at a rate of 11.5 cents for each quart of his milk which is sold at retail. This price is one-half of the multiple sale price of 23 cents for a quart of milk.

R.C.M. 1947, section 27-407, sub. (b), provides in part:

"The retail price to be charged for milk in quart bottles shall not be more than twice the price paid by the distributor to the producer for the same grade and butterfat content of fluid milk purchased from the producer by such distributor. The board shall make adjustment from the basic rate in prices of milk sold in less quantities than quarts and at wholesale."

Plaintiff contends that the portion of the Act quoted guarantees the producer a minimum price of at least one-half the retail price set for a single quart sale. Therefore he contends that he should get 12 cents or one-half the single quart sale price of 24 cents for his milk, rather than one-half the multiple sale price per quart. He states his argument in the alternative in the following manner: "Either the price to the consumer is too high, or the price to the producer is too low. In either event, the order is in contravention of the specific language of the statute."

As against this contention it is asserted that most of the

milk used by consumers comes to them by multiple sales, that is, in more than one quart at a single delivery due to modern methods of preserving the milk by refrigeration, and that in consequence to all intents and purposes the bulk of the milk sales meets the requirement as to price contained in section 27-407, subd. (b), above quoted. These facts do not appear from the complaint and if they constitute justification for defendants' position they would have to be pleaded as a defense. However at best such facts would constitute but a partial defense.

So long as the retail price charged for some of the milk is more than twice the price paid by the distributor to the producer there is a violation of the statute and the judgment of the trial court so far as the price feature of the case is concerned was proper.

Plaintiff's second contention is that the defendant Board ▌ acted without authority in adopting the following motion: "* * * that the Board establish a policy in regard to Attorney General Opinion No. 18 providing the opportunity for producers to share in the transportation costs of milk into the market areas where they feel this is warranted by the benefit to the producers—such transportation not to exceed the lowest common carrier rates for bulk milk (ten gallon cans) in the State of Montana. The distributor, in such instances, must obtain signed statements from each of his producers indicating the producers' willingness to share transportation costs. The Board must be notified when the above procedure is being followed."

Plaintiff alleges that as a consequence thereof he, and other licensed producers, will be compelled to pay transportation costs incurred in distribution of fluid milk after it has been processed and placed in containers by the distributor.

Plaintiff contends that this motion in effect constitutes an avoidance of the Attorney General's Opinion No. 18 found in Volume 23 of the Opinions of the Attorney General. This is not so. As appears from the motion itself the option is left

with the producer to share in the transportation costs. He need not do so unless he so chooses. The motion itself and not the allegations made as to its legal effect is controlling. 17 C.J.S. Pleading, section 375 b, pages 794 to 796, inclusive.

Plaintiff contends that the policy of defendant Board, as established by the adoption of the above motion, will have a devastating effect on the milk industry, will disturb or disregard the minimum producer's price, produce destructive and competitive pricing between marketing areas and otherwise defeat the purpose of the Milk Control Act.

None of these alleged evils are alluded to in the complaint. Likewise it does not appear how plaintiff will be adversely affected by the policy complained of.

There is no cause for enjoining enforcement of the order on the complaint alone, so far as it gives producers the option to share in the cost of moving their milk to outside marketing areas.

Refusal on the part of the producer to share in such expense of transportation automatically renders moot the interesting questions discussed in the briefs of counsel.

The question of transportation cost was discussed in Knudsen Creamery Co. of California v. Brock, 37 Cal. (2d) 485, 234 Pac. (2d) 26, under an order wherein the producer was compelled to pay the cost of transporting the milk. And see discussion in Southside Co-op. Milk Producers Ass'n v. State Milk Commission, 198 Va. 108, 92 S.E. (2d) 351, 356.

As above noted, here the policy was permissive only and not compulsory, and we will not speculate on results before there has been an election to share in such costs.

The third question presented is whether the license fee exacted by sections 27-408 and 27-409, R.C.M. 1947, applies to milk which is ultimately sold by a distributor outside an established market area. The plaintiff made the following allegation in regard to the effect of those sections:

"That the Billings Market Area includes the incorporated City Limits of Billings, and a distance of twelve miles in all

directions from said incorporated city limits; that milk produced by plaintiff is sold beyond the geographical limits of said area by a distributor whose place of business is in said area; that the Montana Milk Control Board threatens to charge plaintiff a license fee based in part upon milk sold by him to the distributors which will be distributed outside of the established market area unless enjoined by this court from so doing. * * *

"* * * and further restrained and enjoined from fixing a license fee based upon any quantity of fluid milk sold outside the established market area."

Plaintiff's contention on this point is without merit. Under section 27-409, the license fee must be computed on the following rates:

"(b) A producer, doing business during the twelve (12) months beginning October first and ending September thirtieth next preceding the license year, shall pay a license fee equal to the sum of fifty cents ($0.50) for each six hundred (600) gallons or fraction thereof of the total volume of fluid milk by him sold." R.C.M. 1947, section 27-409, subd. (b).

R.C.M. 1947, section 27-423, provides: "The license required by this act shall be in addition to any other license required by any statute of Montana or any municipality of the state of Montana. This act shall apply to every part of the state of Montana."

It is true that under section 27-408 it is made unlawful for any producer, to produce or sell milk without a license, in any market "where the provisions of this act apply," but as above noted the act applies to every part of the state.

There is no basis for enjoining the Board's attempt to collect license fees based on the whole volume of milk sold by plaintiff whether within the Billings marketing area or anywhere else within the State of Montana.

The judgment of the court is ordered modified so as to permit the collection of license fees based upon all sales within the state as contemplated by the Board. Also the judgment based

upon the pleadings alone and in the absence of evidence should not restrain enforcement of the policy of the Board in allowing plaintiff to share in the cost of transporting his milk to a place outside the Billings market area, and as thus modified will stand affirmed.

Each party will pay his or its own costs on this appeal.

MR. JUSTICES CASTLES, ADAIR and BOTTOMLY, concur.

MR. CHIEF JUSTICE HARRISON did not participate in this opinion.