Claude ALEXANDER, a minor by his Guardian ad litem, Natalie Magistrale, Plaintiff,

v.

F. S. THOMPSON, individually and as Principal of South Pasadena High School, Jacque Cohen, individually and as Vice-Principal of South Pasadena High School, and Foster Hames, Robert Buchanan, Edward H. Barker, Jane Simmons, and Warren Burres, individually and as members of the Governing Board of the South Pasadena Unified School District, Defendants.

Civ. No. 70–780–F.

United States District Court,
C. D. California.

June 12, 1970.

Pollock, Palmer & Metzler, George Wm. Pilling, Los Angeles, Cal., for plaintiff.

John D. Maharg, County Counsel, James W. Briggs, Asst. County Counsel, Donovan M. Main, Deputy County Counsel, Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION

FERGUSON, District Judge.

### Jurisdictional Statement

Plaintiff has brought this action to challenge a regulation restricting the length of his sideburns, promulgated by the administration of the South Pasadena High School and approved by the Governing Board of the South Pasadena Unified School District. He seeks a declaration that the regulation is invalid as violative of the Fourteenth Amendment to the United States Constitution, and an injunction against its continued enforcement.

 Jurisdiction is invoked under 28 U.S.C. § 1343 and 42 U.S.C. §§ 1981, 1983 and 1988. The court has jurisdiction. Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969), cert. denied, 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970), and Ferrell v. Dallas Independent School District, 392 F.2d 697 (5th Cir. 1968), cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968). Defendants have acted, and they threaten to continue under color of state law to deprive plaintiff of certain freedom of action by refusing to permit plaintiff to attend classes on the ground that his hair style violates the "Clothing Regulations" in force at the school. The Fourteenth Amendment, as now applied to the States, protects the citizen against the State itself and all of its creatures—Boards of Education not excepted. West Virginia State Board of Education v. Barnette, 319 U.S. 624, 637, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).

### Issue Presented

The sole issue presented by this action is whether the defendant members of the School Board or the defendant school administrators acting under the Board's authority may lawfully promulgate and enforce the regulation in question within the scope of the rule-making authority delegated to local school boards by the California Legislature.

*Facts Presented*

The complaint was filed April 13, 1970. On April 14, 1970, plaintiff made application for a temporary restraining order enjoining defendants from refusing to permit him to attend classes. After a hearing the court issued its temporary restraining order and its order to show cause why a preliminary injunction should not issue. The parties stipulated to the facts, and agreed that the matter could be heard on the prayer for a permanent injunction.

As of April 1, 1970, the plaintiff, age 16, was enrolled as a junior at South Pasadena High School. He had been a student there in good standing for over one and one-half years. Acting under color of the authority conferred upon them by the laws of the State of California, the administrative personnel of South Pasadena High School under the direction of defendant F. S. Thompson, Principal, distributed in September, 1969, a document entitled, "Tiger Guide" to the student body which contained a section, "Clothing Regulations". The dress regulations were drafted and recommended to the Board of Education by a Dress Code Review Committee which was formed at the request of the Commission (Student Body Officers) of South Pasadena High School. The Committee was composed of eight students chosen from a list of volunteers by the Commission; four faculty members appointed by the President of a Student-Faculty Advisory Committee and ratified by vote of the faculty; four parent representatives appointed by the President of the PTA and ratified by vote of the PTA members. The Committee met once or twice a week during May and June, 1969, in public meetings normally attended by 20 to 30 members of the public.

In its review, discussion and reevaluation of the South Pasadena High School Dress Regulations, the Committee considered the following factors in addition to the varied viewpoints and observations of committee members and others in attendance at the meetings:

(1) A survey of dress codes and regulations of other high schools throughout the San Gabriel Valley;

(2) Psychological and sociological studies regarding the relationships between dress, grooming and behavior, and the effects of regulations of dress and grooming on the education and socialization of students of high school age;

(3) Polls and surveys of student, parent and faculty opinion regarding dress and grooming standards for South Pasadena High School;

(4) Court cases which have considered the legality of dress and grooming regulations;

(5) Letters from parents and citizens regarding the Committee's review of dress and grooming standards.

The Committee, by a ⅔ majority, voted to recommend the dress and grooming regulations to the School Board. The Board formally adopted the regulations on July 17, 1969, as the "South Pasadena High School Dress Regulations for 1969–1970". Copies of the regulations were also sent by mail to all students of South Pasadena High School and their parents.

The "Clothing Regulations" provide, in pertinent part, as follows:

"Because there seems to be a positive relationship between a pupil's appearance and his attitudes, conduct and seriousness of purpose, the following dress regulations allow a wide latitude of choice and yet, if observed cooperatively by all pupils will, we believe, contribute toward a school atmosphere which is both pleasant and business-like.

Grooming:

Boys should come to school clean shaven.

No beards, or no mustaches extending below the corner of the mouth or over the upper lip, will be permitted.

Boys' hair must be well groomed at all times and must be cut or combed out of the eyes and off the ears, and trimmed to a line not below the bottom of the ears when measured across the back of the neck, and in no case to touch the top of the collar of a standard dress shirt. Sideburns must not extend below the bottom of the ears.

"Deviations from these standards to a degree which constitutes a disturbing influence in school are grounds for suspension. Parents, students and teachers are expected to cooperate in upholding these standards."

Pursuant to the policy announced in the "Clothing Regulations", defendants suspended plaintiff from school on April 1, 1970, for the reason that his sideburns extended below the level of his earlobe in violation of the regulation. On the same date, plaintiff's mother received verification by telephone from defendants that plaintiff would not be permitted to remain in school because of his alleged nonconformity with the regulation.

A request by plaintiff's parents that the order of suspension be rescinded was denied. On April 2, 1970, plaintiff, accompanied by his parents, petitioned the Governing Board of the South Pasadena Unified School District for relief from his suspension, which petition was denied by a unanimous vote of the Board.

In addition to the foregoing, the parties have stipulated to the following material facts:

1. Plaintiff was not referred to the defendant school administrators by reason of any complaint from a student or any of his regular teachers. On March 31, 1970, he was stopped by a Physical Education and Safety Education teacher, Mr. Solari, and informed that his hair did not conform to the school's "Clothing Regulations". Plaintiff was told to report the next day to the office of defendant Cohen, the Vice Principal. On that date, plaintiff was called in and given the alternative of shaving his sideburns or

suspension. Plaintiff indicated he did not intend to shave his sideburns and was thereupon suspended on grounds of "willful disobedience: dress violation after warning".

2. Plaintiff has been attending classes under protection of this court's temporary restraining order since April 14, 1970.

3. Plaintiff's hair style, of itself, did not disrupt classroom decorum, create a disturbance, contribute to campus disorder, interfere with the learning process of other students or otherwise constitute a disturbing influence or an interference with the maintenance of an academic atmosphere at the school prior to his suspension. There have been no such incidents since April 14, 1970, as a result of plaintiff's hair style.

4. With the approval of the administration of South Pasadena High School, a beard-growing contest was held by the student body between April 1, 1970, and April 15, 1970.

5. Plaintiff wears his hair in the fashion he has chosen primarily because he feels it enhances his appearance. Plaintiff regards his mode of hair style as an expression of his individuality and, to a limited extent, he has chosen his hair style to express an independent aesthetic and social outlook, and to demonstrate his rejection of many of the customs and values of the older generation.

6. Plaintiff has an above-average academic standing at South Pasadena High School. On April 24, 1970, he was elected to a student body office in a school-wide election. He has never been a discipline problem at this school or any school he has ever attended, except as to the matter which is the subject of the present action.

7. The dress and grooming regulations at South Pasadena High School are currently being reviewed by a committee of similar composition to the Committee which drafted the present regulations.

8. The Superintendent of the South Pasadena Unified School District and

the Principal of the South Pasadena High School, each with over 20 years' experience in public education, if called to testify, would assert their opinion that the setting and enforcement of maximum limits on dress and grooming for students at the high school level is a reasonable method of developing the psychological and social maturation of students; that, absent the setting of maximum limits for dress and grooming, extremes in dress and personal appearance would result, detracting from the primary purpose of providing sound academic education at South Pasadena High School.

### Source and Scope of School Board Authority

The people of the State of California have expressly given education in the public school system constitutional status. California Constitution Article IX, § 1 provides:

"A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the Legislature shall encourage by all suitable means the promotion of intellectual, scientific, moral, and agricultural improvement."

■ In California not only does society have a right to require full-time attendance of the child in a public or private school, but the law of California grants to the qualified student the correlative right to attend full-time school. 39 Ops. Calif. Atty. Gen. 149.

The California Legislature has found:

"(1) that young people who have dropped out of high school, thereby failing to receive a minimum education, are faced with limited opportunities and employment barriers because of their lack of training and skills; (2) that such young people comprise a disproportionately large segment of the unemployed or unemployables in this State; (3) that such young people are disproportionately involved in juvenile delinquency and youth offenses; (4) that such young people

comprise a disproportionate share of those on the welfare rolls; * * *." Calif. Education Code § 6720.

The power of the state legislature over the public schools is plenary, subject only to any constitutional restrictions. Hall v. City of Taft, 47 Cal. 2d 177, 302 P.2d 574 (1956).

■ Governing Boards of School Districts in California are administrative agencies created by statute and are invested only with the powers expressly granted to them. Paterson v. Board of Trustees, 157 Cal.App.2d 811, 321 P.2d 825 (1958); Grigsby v. King, 202 Cal. 299, 260 P. 789 (1927); Pasadena School Dist. v. Pasadena, 166 Cal. 7, 134 P. 985 (1913). The members of such boards are state officers notwithstanding that their duties may be limited to a particular city. People v. Elliott, 115 Cal. App. 2d 410, 252 P.2d 661 (1953); People v. Darby, 114 Cal. App. 2d 412, 250 P.2d 743 (1952), appeal dismissed, 345 U.S. 937, 73 S.Ct. 833, 97 L.Ed. 1364 (1953).

■ "In our system, state-operated schools may not be enclaves of totalitarianism. School officials do not possess absolute authority over their students. Students in school as well as out of school are 'persons' under our Constitution. They are possessed of fundamental rights which the State must respect, just as they themselves must respect their obligations to the State * * *." Tinker v. Des Moines School Dist., 393 U.S. 503, 511, 89 S.Ct. 733, 739, 21 L.Ed. 2d 731 (1969). One such right is the right to a public education, which is a legal right protected and entitled to equal protection and due process guaranties by which other legal rights are protected and secured. Miller v. Dailey, 136 Cal. 212, 68 P. 1029 (1902); Wysinger v. Crookshank, 82 Cal. 588, 23 P. 54 (1890); Ward v. Flood, 48 Cal. 36 (1874). This right to a public education may be enforced by all those persons eligible thereto under the constitution and legislation. Piper v. Big Pine School Dist., 193 Cal. 664, 226 P. 926 (1924).

Defendants have acted to deprive plaintiff of the right to attend school. Due process requires at a minimum that the denial of a public education not be arbitrary. This constitutional principle was recognized by Chief Judge Wyzanski in Richards v. Thurston, 304 F.Supp. 449, 452 (D.Mass. 1969):

"The current view is that a state has not upon an arbitrary basis an absolutely unlimited right to refuse, opportunities such as education in the public schools, or employment in the public service."

 A necessary condition to the validity of a rule promulgated by a local school board would be that it is relevant to the educating function. School boards do not, for example, have authority to exclude pupils solely by reason of their marital status. 39 Ops. Calif. Atty. Gen. 256 (1962). If a rule meets that test, however, it does not end judicial inquiry into its validity.

### The Delegation Principle and Requirement of a Primary Standard

 Basic to our societal and governmental structures is the assumption that certain areas of conduct, if subject to any governmental regulation at all, should be regulated by the legislature. The presumptions of our system of government also require that such regulations be as explicit as possible where delegation to an administrative agency is involved. Hence, a general grant of power to a local school board should not be construed to enable it to make decisions of the type that are generally and more appropriately reserved for the legislature. *See* Zemel v. Rusk, 381 U.S. 1, 27, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965) (Goldberg dissent); Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958).

The confrontation between school officials and students over "dress regulations", as illustrated by this case, is a contemporary issue which has been in both state and federal courts with increasing frequency in recent years. In King v. Saddleback Junior College Dist., 425 F.2d 426 (9th Cir. 1970), the court made the following observation:

"It is nevertheless appropriate to note that the authorities on the legal questions involved are in disarray. Two circuits have considered the problem with differing results. Ferrell v. Dallas Independent School Dist., 392 F.2d 697 (5th Cir. 1968), cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968); Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969).

"The number of District Court cases dealing with the problem is becoming epidemic." [Citing cases.]

The "Clothing Regulations" at issue in this case were ostensibly promulgated pursuant to the rule-making authority delgated by the State Legislature in California Education Code § 1052, which provides as follows:

"The governing board of any school district shall prescribe rules not inconsistent with law or with the rules prescribed by the State Board of Education, for the government *and discipline* of the schools under its jurisdiction." [Emphasis added.]

The threshold question in determining the validity of the dress regulation herein is whether it is consistent with or contemplated by the rule-making authority under § 1052 (*see also* Education Code § 925), *i. e.*, does § 1052 authorize the promulgation and enforcement of a regulation which deprives a high school student of his right to a public education solely because of the length of his sideburns?

The doctrine of a primary standard to be fixed by the legislature (as an integral part of delegations of rule-making authority) has been developed by the courts to guard against arbitrary administrative action.

 Power to determine the policy of the law is primarily legislative and cannot be delegated. The legislature must perform the policy-declaring function itself. Panama Refining Co.

v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935); Mutual Film Corp. v. Ohio Industrial Commission, 236 U.S. 230, 35 S.Ct. 387, 59 L.Ed. 552 (1915); Knudsen Creamery Co. v. Brock, 37 Cal. 2d 485, 234 P.2d 26 (1951). Thus the California Legislature has not authorized school boards to restrict dress and personal appearance of students attending public schools. At best, all that has been declared is the legislative policy that school boards have power to make rules to maintain "discipline", but no attempt has been made by the State Legislature to define the scope of that term or relate it to dress or hair style. Nor has any showing been made by defendants here, that the intent of the legislature was to reach the type of conduct at issue in this case under such a broad term as discipline.

 Particularly where discretion is reposed in administrative agencies the legislature must, in delegating rule-making authority, fix a primary standard to guide such discretion so as to limit or confine the exercise of the authority conferred. As the California Supreme Court, in *Knudsen Creamery, supra*, at 492, 234 P.2d at 30, stated:

"It is the function of the Legislature to declare a policy and fix the primary standard. To promote the purposes of the legislation and carry it into effect, the authorized administrative or ministerial officer may 'fill up the details' by prescribing administrative rules and regulations (First Industrial Loan Co. v. Daugherty, 26 Cal.2d 545, 549 [159 P.2d 921]), but as so empowered, he may not 'vary or enlarge the terms or conditions of [the] legislative enactment' (Boone v. Kingsbury, 206 Cal. 148, 161 [273 P. 797]; also Whitcomb Hotel, Inc. v. California Emp. Com., 24 Cal. 2d 753, 757 [151 P.2d 233, 155 A.L.R. 405]) or 'compel that to be done which lies without the scope of the statute.' (First Industrial Loan Co. v. Daugherty, *supra*, p. 550.)"

 The delegation and primary standard principles preclude, as a general rule, the delegation of powers which are strictly or inherently and exclusively legislative. The legislature's abdication of its own power by conferring such authority upon an administrative agency to be exercised in its uncontrolled discretion cannot stand the scrutiny of due process. Local school boards exercise a reasonable degree of discretion of necessity, but such general powers are subject to constitutional guaranties of equal protection and due process. Jackson v. Pasadena City School Dist., 59 Cal. 2d 876, 31 Cal. Rptr. 606, 382 P.2d 878 (1963).

 Delegation of such power should be specific by legislative design to confine administrators and enforcement agents to properly defined public objectives and to guard against overbroad regulatory intervention in a private activity. The delegation doctrine as so applied reflects an autonomous judicial concern that an articulate "legislative judgment", Cantwell v. Connecticut, 310 U.S. 296, 307, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), has been made about the necessity to invade individual interests in order to carry out the legislatively defined public will.

Absent a legislative judgment as to the necessary scope of interference embodied in relevant authorizing enactments, the courts are in an "untenable position", Watkins v. United States, 354 U.S. 178, 205, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957), when called upon to weigh the governmental interest in specific administrative action against the interests of a complainant in a particular case.

 Clear guidelines formulated by the legislature are also more persuasive of a governmental interest in regulatory intervention than the situational judgment of individual administrators acting with more narrow aims. *See, e. g.,* United States v. Robel, 389 U.S. 258, 275–276, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967) (Brennan concurring). If the California Legislature within constitutional limits deems student dress and appearance a proper subject for public policy pronouncements and appropriate regu-

lation, it has an obligation to say so and establish a uniform standard applicable to all school districts.

The validity of the delegation and primary standard doctrine has been consistently recognized by the California courts. In a recent case, Kugler v. Yocum, 69 Cal. 2d 371, 375–377, 71 Cal. Rptr. 687, 689–690, 445 P.2d 303, 305–306 (1968), the California Supreme Court succinctly set forth the rules as follows:

"At the outset, we note that the doctrine prohibiting delegation of legislative power, although much criticized as applied * * *, is well established in California. 'The power * * * to change a law of the state is necessarily legislative in character, and is vested exclusively in the legislature and cannot be delegated by it * * *. [Citing cases.]

"Several equally · well established principles, however, serve to limit the scope of the doctrine proscribing delegations of legislative power. For example, legislative power may properly be delegated *if channeled by a sufficient standard.* [Emphasis added.] 'It is well settled that the legislature may commit to an administrative officer the power to determine whether the facts of a particular case bring it within a rule or standard previously established by the legislature * * *. [Citing cases.]

"A related doctrine holds: 'The essentials of the legislative function are the determination and formulation of the legislative policy. Generally speaking, attainment of the ends, including how and by what means they are to be achieved, may constitutionally be left in the hands of others. The Legislature may, after declaring a policy and fixing a primary standard, confer upon executive or administrative officers the "power to fill up the details" by prescribing administrative rules and regulations to promote the purposes of the legislation and to carry it into effect * * *.' [Citing cases.]

"We have said that the purpose of the doctrine that legislative power cannot be delegated is to assure that 'truly fundamental issues [will] be resolved by the Legislature' and that a 'grant of authority [is] * * * accompanied by safeguards adequate to prevent its abuse.' [Citing cases.]

"This doctrine rests upon the premise that the legislative body must itself effectively resolve the truly fundamental issues. It cannot escape responsibility by explicitly delegating that function to others or by failing to establish an effective mechanism to assure the proper implementation of its policy decisions."

### Abstention

 When the California courts have an opportunity, § 1052 of the Education Code predictably will be construed in a manner consistent with the foregoing analysis and found wanting to support the sideburns regulations promulgated by defendants. Abstention in such a case is the proper course absent "special circumstances" which have a "chilling effect" on First Amendment rights or where the State has invoked a criminal statute in bad faith and for the purpose of harassing and disrupting the exercise of those rights. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 335, 20 L.Ed. 2d 182 (1968). No "special circumstances" or "bad faith" are present in this case.

Abstention is proper in a case of this kind where the state courts have not yet ruled on the issues presented in construing a state statute. In Reetz v. Bozanich, 397 U.S. 82, 85, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970), the Supreme Court, in a case involving certain state fishing laws, vacated the judgment of a three-judge district court for failure of the federal court to abstain pending the state court's resolution of the state constitutional questions. The Court, quoting City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 640–641, 79

S.Ct. 455, 456–457, 3 L.Ed.2d 562 (1959), restated the abstention rationale as follows:

" 'Proper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions. * * * That is especially desirable where the questions of state law are enmeshed with federal questions. * * * Here, the state law problems are delicate ones, the resolution of which is not without substantial difficulty—certainly for a federal court. * * * In such a case, when the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily.' "

 The California state courts have not yet interpreted the scope of the rulemaking authority under Education Code § 1052 as to whether the terms "and discipline", which were added by statutory amendment in 1969, are a source of school board power of the type employed by defendants here to promulgate rules governing a student's dress and appearance.

In interpreting a predecessor section of the Education Code, however, § 10604, which was amended in 1969 to delete the provisions now covered in § 1052, the California courts acknowledged their uncertainty on that issue. In Myers v. Arcata Union High School Dist., 269 Cal. App. 2d 549, 556, 75 Cal. Rptr. 68, 72 (1969), a case which also involved the suspension of a high school student because of the length of his hair, the court in a footnote said:

"Section 10604 provides in pertinent part that 'The governing board of any school district may make and enforce all rules and regulations needful for the government and discipline of the schools under its charge. Any governing board shall enforce the provisions of this section by suspending, or, if necessary, expelling a pupil in any elementary or secondary school who refuses or neglects to obey any such rules and regulations.'

"(Education Code section 925 has been cited as the statutory source of a school district governing board's rulemaking power in the area of student discipline here involved. (Akin v. Riverside Unified School Dist. Board of Education (1968) 262 Cal. App. 2d 161, 167 [68 Cal.Rptr. 557].) That section, however, is expressly limited to the promulgation of rules by a board 'for its own government.' Because the above-quoted language of section 10604 [although appended to a legislative prohibition of secret organizations in schools] is not so limited, *we conceive it to be the source of the board's authority to adopt rules controlling student dress and appearance.*)" [Emphasis added.]

The former language of § 10604 has been reduced in § 1052 to: "The governing board of any school district shall prescribe rules not inconsistent with law or with the rules prescribed by the State Board of Education, for the government and discipline of the schools under its jurisdiction." The intent of § 1052 has not been construed by the state courts beyond the language quoted above from *Myers*.

A state court decision in this case, interpreting the validity of § 1052 of the Education Code as it has been applied by defendants will unquestionably do substantial justice and permit the plaintiff to obtain the relief he seeks here. Such a state court decision would thus avoid any possible irritant in the federal-state relationship. Accordingly, this court in the exercise of its discretion will postpone the exercise of its jurisdiction in deference to the state courts' first considering the underlying issues in light of this opinion.

However, in order to preserve the status quo and assure the plaintiff that

his right to a public education will not arbitrarily be taken away from him, the court shall as a part of its judgment continue the restraint imposed by its temporary restraining order.

 Furthermore, the court will reserve its jurisdiction over the parties and the cause of action pending action by the state courts. The burden of prosecuting in the state courts their alleged authority to deprive a California high school student of his right to a public education merely because of the length of his sideburns must fall on the defendants. The plaintiff has demonstrated in this court such a degree of arbitrary conduct on the part of the defendants that justice requires that the burden of expelling him must rest with the defendants.

### Judgment

Pursuant to the provisions of Rule 52 of the Federal Rules of Civil Procedure, this memorandum opinion shall constitute the court's Findings of Fact and Conclusions of Law.

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, a judgment shall be separately prepared and entered as follows:

"1. The court abstains from entering a final judgment in this cause until the state courts of California have finally resolved the questions of state law presented in this litigation.

"2. The court reserves jurisdiction to determine the federal constitutional questions after the state courts of California have resolved state law.

"3. Pending further order of this court, defendants F. S. Thompson, Principal of South Pasadena High School, and Jacque Cohen, Vice-Principal of South Pasadena High School, and defendant members of the Governing Board of the South Pasadena Unified School District, and all persons acting pursuant to their direction and control, are restrained and enjoined from refusing to permit Claude Alexander to attend classes at South Pasadena High

School on the grounds that his hair style does not conform to the regulations set forth in the school's Clothing Regulations.

"4. The burden is upon the defendants to present to the state courts of California their alleged authority to deprive the plaintiff of his right to a public education solely because of the length of his sideburns.

"5. The court reserves jurisdiction to enforce the terms and provisions of this judgment.

"6. The court reserves jurisdiction to award and tax costs."