**Jerry R. STEARNS, Plaintiff,**

v.

**Coy D. ESTES, etc., et al., Defendants.**

**No. CV 80–4127–AWT.**

United States District Court,
C. D. California.

Dec. 17, 1980.

Ralph B. Saltsman, Marina Del Rey, Cal., for plaintiff.

John Liebert, Liebert, Cassidy & Frierson, Los Angeles, Cal., for defendants.

### MEMORANDUM OPINION AND ORDER RE PRELIMINARY INJUNCTION AND STAY

TASHIMA, District Judge.

This is an action for injunctive and declaratory relief under the Civil Rights Act,

---

42 U.S.C. § 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343 and 2201.

Plaintiff is a police officer employed by defendant City of Upland, having been employed as such since May 1, 1978. Defendant Estes is the Chief of Police of Upland.

On July 10, 1980, the Upland Personnel Department was notified that plaintiff and Constance R. Stearns, a dispatcher in the Upland Police Department, were recently married. On July 21, plaintiff and Ms. Stearns were notified by Chief Estes of his conclusion that, in substance, the continued employment of both husband and wife in their current positions posed a serious potential conflict of interest.[1] For this reason, Chief Estes ordered that one or the other must seek employment in another Division of the Department or another Department of the City, if such a position were available or resign. The decision of which was to resign was left to the Stearns. When the deadline imposed by Chief Estes passed with no action having been taken by the Stearns, the Chief issued a "Lay-Off Notice" to plaintiff, effective September 19, 1980. Plaintiff's lay-off was premised on his having less seniority than Ms. Stearns, whose hire date is January 1, 1978.

On September 18, 1980, this Court issued a temporary restraining order, prohibiting defendants from terminating plaintiff's employment, pending a hearing on the order to show cause why a preliminary injunction should not issue.

Plaintiff first claims that he was denied procedural due process by the misapplication of the City's lay-off procedure to him. Plaintiff's threatened termination does not appear to come within the lay-off rule which, by its own terms, applies to the "elimination, curtailment, or reorganization of a public service activity which, in turn, may require the lay-off of one or more employee." Its purpose is to "minimize the impact of staff reduction." The lay-off procedure apparently does not provide a right to a hearing and plaintiff did not receive a hearing, despite his demand for one.

Plaintiff's second claim is that he is being denied of both substantive constitutional rights and statutory rights under state law. Plaintiff claims that marriage and marital rights are fundamental rights protected by the constitution and that any governmental action impinging on those rights must be able to withstand the "strict scrutiny" test; that the City's action in threatening to terminate him solely on account of his marital status does not meet that test.

Plaintiff also claims that his threatened termination violates Cal.Labor Code § 1420(a), which makes it an unlawful employment practice,

"For an employer, because of the ... marital status ... of any person ... to discharge such person from employment...."

He claims further that his case does not fall within the "reasonable regulation" exception to this prohibition.

"Nothing in this part relating to discrimination on account of marital status shall ... affect the right of an employer to reasonably regulate, for reasons of supervision, safety, security or morale, the working of spouses in the same department, division, or facility, consistent with the rules and regulations adopted by the commission...."

Cal.Labor Code § 1420(a)(3). The term "marital status" and subsection (a)(3) were added to Cal.Labor Code § 1420 in 1976. There are no reported cases construing these provisions, including the meaning of the term "to reasonably regulate."

The only pertinent regulation adopted by the California Fair Employment Practice Commission, the state agency charged with enforcing this statute, provides:

---

1. Plaintiff contends that there is no basis in fact for Chief Estes' conclusion and points to the fact that he and Ms. Stearns cohabited "as husband and wife without State recognition of their status" for one year prior to their marriage and that during this period "no conflict of interest arose."

"For business reasons of supervision, security or morale, an employer may refuse to place both spouses in the same department, division or facility if the work involves potential conflicts of interest or other hazards greater for married couples than for other persons."

2 Cal.Adm.Code § 7292.5(a)(2). It is not clear that plaintiff's threatened discharge would fall within this exception. Defendants' "conflict of interest" argument is essentially a public safety argument and an argument that the employment of the Stearns would result in a greater hazard to others. Yet, the regulation speaks in terms of hazards "greater for married couples than for other persons" and contains no "safety" exception. The fact that safety is omitted in 2 Cal.Adm.Code § 7292.5(a)(2) as a permissible reason for prohibiting the employment of both spouses in the same department appears to have been intentional. 2 Cal.Adm.Code § 7292.5(a)(1), which pertains to the direct supervision of one spouse by the other, specifically provides that "safety" is a legitimate reason for not allowing such direct supervision.

█ Because of the lack of a construction of these provisions by a state court and because the state law claim of violation of Section 1420 is potentially dispositive of this case, the Court raised *sua sponte*,[2] the question of whether this was a proper case to apply the *Pullman* abstention doctrine, *Railroad Comm'n. v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

This is a case "where an unconstrued state statute is susceptible of a construction by the state judiciary 'which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem.' " *Belotti v. Baird*, 428 U.S. 132, 147, 96 S.Ct.

2857, 2866, 49 L.Ed.2d 844 (1976). "It touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open. Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy." *Railroad Comm'n. v. Pullman Co., supra*, 312 U.S. at 498, 61 S.Ct. at 644.

The Ninth Circuit, however, has adopted the view that, while "not necessarily improper," district courts should be especially careful in deciding whether or not to abstain in civil rights cases arising under Section 1983.

"[I]t is reasonable to conclude that cases involving vital questions of civil rights are the least likely candidate for abstention.... Indeed, the objectives of the Civil Rights Act would be defeated if we decided that this federal claim grounded on an alleged violation of the federal constitution would have to stagnate in the federal court until some nebulous or nonexistent remedy was pursued like a will-o'-the-wisp in the state court."

*Canton v. Spokane School Dist. # 81*, 498 F.2d 840, 846 (9th Cir. 1974) (quoting and agreeing with the 2d Circuit's decision in *Wright v. McMann*, 387 F.2d 519, 525 (1967)). This, however, is not the type of case to which that comment appears to have been addressed. Here it is the state which has enacted a specific statutory remedy to prohibit discrimination on account of marital status, whereas the question of whether or not and if so, to what extent, the constitution affords protection from employment discrimination on account of marital status is an unsettled question.[3]

The Court, therefore, is of the view that this is a proper case for the exercise of its

---

**2.** *See Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

**3.** Defendants cite a number of cases which they claim uphold no-spouse employment policies. However, all of these are sex discrimination cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* For example, *Yuhas v. Libbey-Owens-Ford Co.*, 562 F.2d 496 (7th Cir. 1977), challenged the employer's no-

spouse rule as sexually discriminatory because of its disparate impact on women. *Yuhas* rejected the Title VII sex discrimination charge, but, like the other cases cited by defendants, does not address any constitutional claim based on marital status. Neither party has cited and the Court has not found any reported case deciding this issue.

discretion to abstain, even though this action is brought under the Civil Rights Act.

Abstention on a state law issue, however, does not mean that this Court can abdicate its responsibility to decide the federal constitutional issues. Plaintiff cannot be required to litigate his federal claims in state court and his right to return must, in all events, be preserved. *England v. Board of Medical Examiners*, 375 U.S. 411, 420–23, 84 S.Ct. 461, 467–68, 11 L.Ed.2d 440 (1964). We must, therefore, consider next whether, as requested by plaintiff, an injunction *pendente lite* is necessary to make meaningful plaintiff's "right to return," should he choose to do so. *Alexander v. Thompson*, 313 F.Supp. 1389, 1399 (C.D.Cal.1969).

In making this determination there appears to be no reason why the general standard applicable to preliminary injunctions should not be applied in abstention cases. The standard in this circuit is the continuum between (1) probable success on the merits and the possibility of irreparable injury and (2) serious questions are raised and the balance of hardship tips sharply in favor of the movant. *Benda v. Grand Lodge, I. A. M.*, 584 F.2d 308, 314–15 (9th Cir. 1978). With respect to the element of likelihood of success on the merits, the "irreducible minimum" is either *(a) a fair chance of* success on the merits or (b) questions serious enough to require litigation. *Id.* at 315. We apply this standard to plaintiff's federal claims for two reasons. First, by definition, abstention is necessary because the scope of the state law remedy, *i.e.*, the likelihood that plaintiff will prevail on the merits, is not clearly discernible. Secondly, the purpose to be served by a preliminary injunction in an abstention case should be to preserve plaintiff's federal claims.[4]

■ With respect to plaintiff's first claim of denial of procedural due process, the posture of the case has changed since the issuance of the temporary restraining order. Chief Estes' initial decision to terminate plaintiff's employment was, in essence, a unilateral, subjective decision, made without a hearing. Plaintiff is a permanent, non-probationary employee of the Upland Police Department. He, therefore, has a "property" interest in continued employment within the meaning of the Fourteenth Amendment and, thus, the constitutional guarantee of procedural due process. *Arnett v. Kennedy*, 416 U.S. 134, 165–66, 94 S.Ct. 1633, 1649–50, 40 L.Ed.2d 15 (1974) (Powell, J., concurring); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972).

The City appears to have recognized that its initial procedure in terminating plaintiff's employment did not meet due process requirements. The return date of the order to show cause why a preliminary injunction should not be issued was continued at the City's request and, in the interim, plaintiff was granted the type of non-evidentiary, non-adversary hearing described in *Skelly v. State Personnel Board*, 15 Cal.3d 194, 215, 124 Cal.Rptr. 14, 539 P.2d 774 (1975), in which the California Supreme Court applied the *Arnett, supra*, standard.[5] However, both of these cases involved punitive discharges and, thus, recognized the need to balance the employee's right against the substantial interest in the expeditious removal of an employee for disciplinary reasons. *Arnett, supra*, 416 U.S. at 167–69, 94 S.Ct. at 1650–51 (Powell, J., concurring); *Skelly, supra*, 15 Cal.3d at 212–213, 124 Cal.Rptr. 14, 539 P.2d 774. The City here concedes that plaintiff's discharge is not punitive or for disciplinary reasons. Therefore, the compelling reasons for short-cut-

---

4. The cases are not clear on whether abstention means also to abstain on preliminary relief pending trial of the state law claim. The injunction here is not issued on the state law ground and plaintiff obviously may, if he so chooses, apply to the state court for preliminary relief on the state law ground, pending trial in state court.

5. Plaintiff discovered at his "*Skelly*" hearing that the City's no-spouse policy is unwritten and complains that he had no notice of the existence of the policy before his marriage. Because the preliminary injunction will issue for other reasons, we need not now address this claim.

ting pre-removal safeguards in disciplinary cases are not present and plaintiff, thus, has at least raised a serious question with respect to whether his pre-discharge hearing was adequate under due process standards.[6]

On plaintiff's second claim that the City's no-spouse policy is an infringement of substantive constitutional rights, the Supreme Court has recognized in a variety of contexts that the right to marry, marriage and the marital relationship, are fundamental rights. *See generally Johnson v. United States*, 422 F.Supp. 958, 969–71 (N.D.Ind. 1976), *aff'd sub nom. Barter v. United States*, 550 F.2d 1239 (7th Cir. 1977), *cert. denied*, 434 U.S. 1012, 98 S.Ct. 725, 54 L.Ed.2d 755 (1978). Therefore, although no guiding precedent has been found on constitutional protection from employment discrimination by a public employer on account of marital status, I conclude that it is a question serious enough to require litigation.

Because the City should be able to avoid plaintiff's working on the same shift as his wife or at least minimize the overlap in their working hours, whereas termination of plaintiff's employment will deprive him of the opportunity to work and to continue to develop his skills in his chosen profession, I find that the balance of hardship tips sharply in plaintiff's favor. Plaintiff, therefore, has met the alternate test under *Benda, supra*, and a preliminary injunction should issue prohibiting plaintiff's termination.[7]

6. Defendants' reliance on *Board of Curators v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), that a pre-removal hearing may not be required at all, is misplaced. That case dealt with the issue of procedural due process in the dismissal of a student for failure to meet the university's standard of academic scholarship. *Id.* 435 U.S. at 84–91, 98 S.Ct. at 952–55. It did not address the issue of the applicable due process requirement in the discharge of a permanent, public employee for the kind of reason advanced here. Therefore, *Horowitz* does not affect the issue of whether, on his procedural due process claim, plaintiff has raised questions serious enough to require litigation.

*Order*

It is, therefore, ORDERED:

1. This Court abstains from deciding the question of state law drawn into controversy in this case and this action is stayed, pending a final determination of the state law question by the courts of the State of California.

2. Plaintiff is ordered to promptly and diligently prosecute to a final judgment in the courts of the State of California his claim that his threatened termination violates the provisions of Section 1420 of the California Labor Code and any other claim under state law involved in this controversy.

3. This Court retains jurisdiction over this cause to determine the federal constitutional issues involved herein, if plaintiff, in the state court proceeding, makes an *England* "reservation," 375 U.S. at 421, 84 S.Ct. at 467; *see Lurie v. California*, 633 F.2d 786, 788 (9th Cir. 1980), and the controversy is not fully adjudicated in the state court proceeding;

4. Pending the determination of this matter on the merits or until further order of this Court, defendants, and each of them, their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, are hereby restrained and enjoined from terminating the employment of plaintiff, Jerry R. Stearns, as a police officer in the Police Department of the City of Upland.

7. Defendants waived the giving of security at the time of plaintiff's application for the temporary restraining order. At the hearing on the order to show cause why a preliminary injunction should not be issued, defendants were not prepared to address the question of whether they would continue to waive security if a preliminary injunction were issued. Defendants were, therefore, granted leave to file a written statement of the amount of security they deemed would be adequate. Since no such statement has been filed, the Court finds that defendants have waived the requirement of Rule 65(c), Fed.R.Civ.P., and no security shall be required.

5. This memorandum opinion shall serve as the Court's findings of fact and conclusions of law under Rule 52(a), Fed.R.Civ.P.