[No. D006073. Fourth Dist., Div. One. July 25, 1988.]

GARY STEVEN MARTINET, Plaintiff and Appellant, v. DEPARTMENT OF FISH AND GAME et al., Defendants and Respondents.

**COUNSEL**

Earl T. Durham for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, R. H. Connett, Assistant Attorney General, Walter E. Wunderlich and Denis D. Smaage, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**WORK, J.**—Gary Steven Martinet appeals the denial of his petition for a writ of mandate ordering the California State Department of Fish and Game and the captain of its San Diego office, Rodney Shackelford,[1] to issue him a shark and swordfish drift gill net permit. We affirm.

### I

Martinet has been a commercial fisherman for more than 10 years and a shark and swordfish fisherman since 1977. The boat he purchased in 1982 is exclusively a shark drift gill net vessel.

Martinet fished off the Oregon and Washington coasts from the 1983 season until the middle of the 1984 season. At that time he hired a fisherman who had a shark drift gill net permit enabling him to fish in California waters. When his employee quit, Martinet was out of business until he was able to hire another fisherman with a permit. He may be faced with this problem again.

On March 4, 1985, Martinet obtained a general gill net permit. In April, he applied for a shark drift gill net permit. The Department denied his application because he did not qualify as a prior permittee (Fish & G. Code,[2] § 8568, subd. (a)) but forwarded Martinet's application to the Long Beach office, which was to hold a lottery for the persons applying as new entrants if the number of permits issued to prior permittees was fewer than 150 (§§ 8568, subd. (b), 8570). However, the Department notified Martinet that more than 230 permits had been issued the previous season (1984-1985), making it unlikely the number of prior permittees would be fewer than 150. Martinet appealed to the Fish and Game Commission (§ 8569) asserting factors beyond his control, i.e., his vessel was destroyed by fire in August 1980 and his insurance company was bankrupt, preventing him from qualifying as a prior permittee. On October 3, 1986, the commission denied his appeal, finding he had failed to meet the requirements for the permit and this was not due to circumstances beyond his control. The commission considered Martinet's petition, the Department's answer, as well as an affidavit by Eugene Fleming, the Department's marine resources supervisor. According to Martinet, after he applied for the permit, the Department issued permits to at least three San Diego residents, two of whom did not own vessels or the necessary equipment and one of whom had a vessel but no equipment and no experience as a shark and swordfish

---

[1] We refer to respondents collectively and the Department of Fish and Game individually as "Department."

[2] All statutory references are to the Fish and Game Code.

drift gill net fisherman. Martinet hired another fisherman who had a permit, enabling him to engage once more in shark drift gill net fishery.

## II

In 1980 and 1982, the Legislature enacted the Drift Gill Net Shark and Swordfish Fishery Law (§§ 8560-8583), creating a limited entry fishery for shark and swordfish with drift gill nets in waters south of Point Arguello (§§ 8570, 8561, subd. (b)). Section 8568 provides for the issuance of permits to two categories of applicants: prior permittees and new entrants. If the number of prior permittees is 150 or more, no permits are issued to new entrants. (§ 8570, subd. (a).) Otherwise, new entrants are chosen in a lottery. (§ 8570, subd. (b).)

■ Martinet contends the Drift Gill Net Shark and Swordfish Fishery Law denies him equal protection. He asserts the limit on the number of permits merely prevents him from obtaining one, rather than serving the statutory scheme's ostensible purpose of keeping thresher shark and swordfish from being overfished.

■ An economic regulation creating classifications with some reasonable basis does not result in denial of equal protection simply because the classifications are mathematically imprecise or because their application results in some inequality. (*Ferrante* v. *Fish & Game Commission* (1946) 29 Cal.2d 365, 372 [175 P.2d 222].) A law which favors existing businesses over new ones will be upheld if there is any reasonable and substantial justification for the distinction. (*Del Mar Canning Co.* v. *Payne* (1946) 29 Cal.2d 380, 382 [175 P.2d 231].) The person challenging such a classification has the burden of proving it is arbitrary and without reasonable foundation. (*Ferrante* v. *Fish & Game Commission, supra,* 29 Cal.2d at p. 372.) "[I]f any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed." (*Ibid.*)

■ Here, section 8568, subdivision (a) defines a prior permittee as one who possesses a valid gill net permit (§ 8681), possessed a valid drift gill net shark and swordfish permit during the preceding season and did not have that permit revoked, and landed a minimum amount of swordfish or shark during one of the two immediately preceding permit years. Section 8568, subdivision (b) defines a new entrant as a person who fails to qualify as a prior permittee and possesses a valid gill net permit (§ 8681). The number of permits available to new entrants is limited, while the number available to prior permittees is not. (§ 8570.)

In certain situations, permits may be granted to persons not meeting the above criteria. For example, any commercial fisherman who had been licensed over 20 years and had participated during one of those years in the drift gill net shark and swordfish fishery was eligible for inclusion during the initial year of the limited fishery created by sections 8560-8583. (§ 8101, subd. (a).) Additionally, section 8568.5, enacted in 1986, allows the issuance of drift gill net shark and swordfish permits to certain California fishermen who formerly were allowed to fish for tuna in Mexican waters.

Thus, the Drift Gill Net Shark and Swordfish Fishery Law distinguishes persons who have successfully engaged in shark and swordfish fishery with drift gill nets in the recent past from persons who merely have valid gill net permits. Also, some persons who fail to meet the requirements of section 8568, subdivision (a) but meet other criteria related to experience are placed in the preferred class. (§§ 8101, subd. (a), 8568.5.) The members of this class of prior permittees and exempt persons may reasonably be assumed to rely on the limited fishery for their livelihood. The possibility this differentiation may not be exact does not render the statutes unconstitutional. Nor may Martinet successfully claim the statutes are invalid because they protect shark and swordfish from overfishing by new entrants but not prior permittees. ▮ The Legislature may adopt economic regulations "that only partially ameliorate a perceived evil." (*New Orleans* v. *Dukes* (1976) 427 U.S. 297, 303 [49 L.Ed.2d 511, 517, 96 S.Ct. 2513].) ▮ The statutes are reasonably drawn to protect against overfishing, while also protecting the fishing industry and those persons who have invested in and practiced drift gill net fishing of shark and swordfish in the past and others with experience in certain fisheries.

We conclude Martinet has failed to show a denial of equal protection and that the trial court did not err in denying his petition for a writ of mandate.

### DISPOSITION

The order is affirmed.

Wiener, Acting P. J., and Todd, J., concurred.